# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FREEDOM NETWORK USA,<br><br>Plaintiff,<br><br>v.<br><br>PRESIDENT DONALD J. TRUMP, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, OFFICE FOR VICTIMS OF CRIME, ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE PAMELA BONDI,<br><br>Defendants. | Case No. 1:25-cv-12419<br><br>Judge: Hon. Matthew F. Kennelly<br><br>JURY TRIAL DEMANDED |

# MOTION FOR TEMPORARY RESTRAINING ORDER

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ACLU of Ill. v. Alvarez*,
    679 F.3d 583 (7th Cir. 2012) ..................................................................................................6

*Am. Hosp. Ass'n v. Kennedy*,
    No. 2:25-CV-00600-LEW, 2025 WL 3754193 (D. Me. Dec. 29, 2025)..................................6

*Career Colleges & Schs. of Texas v. United States Dep't of Educ.*,
    98 F.4th 220 (5th Cir. 2024), *cert. granted in part sub nom. Dep't of Educ. v.
    Career Colleges & Schs. of Texas*, 145 S. Ct. 1039 (2025)....................................................6

*Chicago Hous. Auth. v. Turner*,
    No. 1:25-CV-12670, 2025 WL 2972665 (N.D. Ill. Oct. 20, 2025) .........................................4

*Chicago Women in Trades v. Trump*,
    25 C 2005, 2025 WL 3034056 (N.D. Ill. Oct. 30, 2025)......................................................6, 7

*City of Chicago v. Barr*,
    961 F.3d 882 (7th Cir. 2020) ..................................................................................................6

*City of Chicago v. Dept. of Justice*,
    No. 25 C 13863, 2026 WL 114294 (N.D. Ill. Jan. 15, 2026) ..................................................5

*City of Chicago v. Noem*,
    25 CV 12765*,* 2025 WL 3251222 (N.D. Ill. Nov. 21, 2025)...................................................5

*Cnty. of Santa Clara v. Noem*,
    25-cv-08330-WHO, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025*)* ........................................5

*HIAS Inc. v. Trump*,
    985 F.3d 309 (4th Cir. 2021) ..................................................................................................7

*Hills v. Gautreaux*,
    425 U.S. 284 (1976)................................................................................................................7

*Housing Auth. of the City & Cnty. of S.F. v. Turner,*
    25-cv-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025) ..........................................5

*Illinois v. FEMA*
    801 F. Supp. 3d 75 (D.R.I. 2025).............................................................................................5

*Illinois v. Vought*,
    1:26-cv-01566 (N.D.Ill. Feb. 12, 2026)...................................................................................5

*Mays v. Dart*,
   453 F. Supp. 3d 1074 (N.D. Ill. 2020) ............................................................................... 4, 5

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................................................ 6

*Texas Top Cop Shop, Inc. v. Garland*,
   758 F.Supp.3d 607 (E.D. Tex. 2024) ..................................................................................... 7

*Trump v. CASA, Inc.*,
   606 U.S. 831 (2025) ............................................................................................................... 7

## INTRODUCTION

Freedom Network seeks emergency relief from the Court to enjoin Defendants from enforcing the New Funding Conditions[1] contained in the NOFOs that are the subject of its First Amended Complaint [ECF No. 69] and its Amended Motion for a Preliminary Injunction [ECF No. 70]. Though the New Funding Conditions attach upon an applicant's acceptance of an awarded grant, the harm resulting from the New Funding Conditions commences far sooner—as soon as a putative grantee begins the application process. This is because an applicant must describe its understanding of the problem and its design for addressing that problem. Here, the problem is human trafficking, and any serious effort to address it must speak to the underserved and immigrant populations most impacted by that problem. But doing so would place an application squarely in tension with the New Funding Conditions, which assuredly will inform the DOJ's Office for Victims of Crime's ("OVC") consideration of the applications, and would impact the applicant's ability to win the grant in the first instance. Thus the New Funding Conditions irreparably harm Freedom Network to the extent they play any role whatsoever in the NOFO application process.

The first deadline for applicants to respond to the NOFOs is tomorrow, February 24, 2026, and the parties have been unable, despite discussions over the last few weeks, to reach an agreement to suspend or delay any application of the New Funding Conditions until this Court issues a decision on Plaintiffs' request for a preliminary injunction. Those discussions continued through today when, at 3:15 PM EST, counsel for Defendants informed Freedom Network that the government could not agree to any sort of suspension of the New Funding Conditions.

---

[1] Defined terms have the same meaning as in Freedom Network's February 20, 2026 Amended Motion for Preliminary Injunction.

1

Accordingly, Freedom Network now asks the Court to enjoin the Defendants from utilizing the New Funding Conditions in any way as part of the application-review process, and to require Defendants to immediately update all prospective grantees that the New Funding Conditions are suspended, while its motion for preliminary injunction is pending.

## ADDITIONAL FACTUAL BACKGROUND

As detailed in Freedom Network's motion for preliminary injunction, on December 30, 2025, DOJ issued seven NOFOs that include the New Funding Conditions for Trafficking Victims Protection Act ("TVPA")-authorized grant programs. The New Funding Conditions, if allowed to stand, will effectively prohibit Freedom Network and other prospective grantees from serving the communities and fulfilling the purposes for which Congress designated TVPA funds. *See* Supplemental Declaration of Jean Bruggeman, dated February 20, 2026 ("Supp'l Bruggeman Decl.") ¶¶ 2, 11, 20, 41-42.

The harm of the New Funding Conditions begins tomorrow, February 24, 2024, as soon as the Application for Federal Assistance SF- 424 Form is submitted. *Id.* ¶ 35. Four of the NOFOs set a deadline of February 24, 2026 to submit an SF-424, and a deadline of March 3, 2026 to submit a full application; and three of the NOFOs set a deadline of March 11, 2026 to submit an SF-424, and a deadline of March 18, 2026 to submit a full application.[2]

The SF-424 Form, submitted before the official grant proposal, binds applicants to the information they submit in the form, and the SF- 424 Form requires applicants to list information that could trigger prohibited conduct under the New Funding Conditions. *See* Supp'l Bruggeman Decl. ¶ 35. For example, applicants may be required to identify the geographic location of the proposed work, the population served, and a description of the grant project. *Id.* Applicants are

---

[2] *See* https://ovc.ojp.gov/funding/current-funding-opportunities (last visited February 23, 2026); *see also* Exs. A and B to Supp'l Bruggeman Decl.

similarly bound by the information they submit in their grant applications, which cannot be negotiated or changed after they are submitted. *Id.* The grant proposal requires applicants to describe in detail the populations they intend to serve, the work the organization is doing on behalf of those populations, how the work satisfies the NOFO goals and grant deliverables, background information on the organization, and more. *Id.*

Additionally, applicants must explain in their grant applications how they will comply with the requirements and conditions in the NOFOs, including the New Funding Conditions. *Id.* ¶ 36. If applicants do not address all of the NOFO requirements and conditions, their applications are more likely to be denied because they may lose points during the required peer review process and the Office of Justice Programs staff may downgrade their application for failing to align with the NOFOs' strategic priorities. *Id.* And because applicants cannot change the information they provide in the SF-424 Form or the full grant proposal after they are submitted, applicants, like Freedom Network, must decide whether and how to explain how they will comply with the New Funding Conditions *before* they submit the application. *Id.*

In an effort to avoid seeking emergency relief, Freedom Network, through counsel reached out to Defendants shortly after filing its First Amended Complaint to discuss the NOFO application deadlines and the impact the New Funding Conditions would have upon the application process. *See* Declaration of Anuj Vohra, dated February 23, 2026 ("Vohra Decl.") ¶ 3. On February 17, 2026, Plaintiff's counsel provided Defendants' counsel with a proposed stipulation by which OVC would agree to not cancel, delay or take any adverse action against applications with respect to the New Funding Conditions, and which would require Defendants to notify prospective applicants of that fact. *Id.* at ¶ 5. On February 18, 2026, Defendants rejected the proposal stipulation. In response, Plaintiff's counsel requested that OVC agree to delay all

application deadlines, including the February 24, 2026 SF-424 submission deadline. On February 20, 2026, Defendants' counsel stated that OVC would not agree to extend any application submission deadlines. That same day, Plaintiff's counsel re-raised the possibility of a stipulation ensuring the New Funding Conditions would not inform any aspect of OVC's consideration of applications in response to the NOFOs. The parties continued discussions on that possibility until just after 3:00 PM Eastern Time today, February 23, 2026, at which point Defendants' counsel informed Plaintiff's counsel that OVC could not agree to any such stipulation. *Id.* at ¶¶ 6-8.

Because the parties were unable to reach agreement during those discussions, Freedom Network files this motion for a temporary restraining order. Neither Freedom Network nor any applicant seriously committed to preventing trafficking, protecting survivors, and prosecuting traffickers can do so in the face of the New Funding Conditions, which make it all but impossible for any applicant to speak to how they would protect underserved and immigrant populations who are especially vulnerable to trafficking. Complying with the New Funding Conditions would leave Freedom Network with the untenable choice of accepting grants with the New Funding Conditions in contravention of the TVPA's congressionally mandated purposes or foregoing the funding and potentially ceasing its ability to serve trafficking victims nationwide.

## ARGUMENT

### I. LEGAL STANDARD

The standard for issuing a temporary restraining order is the same standard that applies for the issuance of a preliminary injunction. *Chicago Hous. Auth. v. Turner*, No. 1:25-CV-12670, 2025 WL 2972665, at *2 (N.D. Ill. Oct. 20, 2025); *Mays v. Dart*, 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020). First, the moving party must show irreparable harm, the inadequacy of a legal remedy, and some likelihood of success on the merits. *Id.* Once that threshold is met, the court

4

proceeds to weigh whether the balance of harms favors the moving party or whether the harm to the other party and the public interest outweighs the moving party's interest. *Id.; see also Illinois v. Vought,* 1:26-cv-01566 *(*N.D.Ill. Feb. 12, 2026) (granting a TRO for Administration Procedures Act ("APA") violations on the termination of federal grants).

**II.    FREEDOM NETWORK WILL BE IRREPARABLY HARMED ABSENT RELIEF**

If Freedom Network is forced to submit SF-424 Form tomorrow, February 24, 2026, it will be immediately and irreparably harmed by the New Funding Conditions. As discussed in detail in its Amended Motion for Preliminary Injunction, the New Funding Conditions violate the Constitution and the APA (*see* ECF No. 70 at 14-19), and therefore presumptively cause injury. *City of Chicago v. Dept. of Justice,* No. 25 C 13863, 2026 WL 114294, at *10 (N.D. Ill. Jan. 15, 2026); *City of Chicago v. Noem,* 25 CV 12765, 2025 WL 3251222, at *9 (N.D. Ill. Nov. 21, 2025) (finding APA violations for similar grant conditions); *Illinois v. FEMA* 801 F. Supp. 3d 75 (D.R.I. 2025) (granting a TRO on constitutional and APA grounds against a similar Immigration Enforcement Condition). They create the Hobson's choice of foregoing federal funding or relinquishing constitutional rights and risking "arbitrary enforcement" of the New Funding Conditions. *Cnty. of Santa Clara v. Noem,* 25-cv-08330-WHO, 2025 WL 3251660 at *43 (N.D. Cal. Nov. 21, 2025*)*: *Housing Auth. of the City & Cnty. of S.F. v. Turner, 25-cv-08859-JST, 2025 WL 3187761,* at *19 *(N.D. Cal. Nov. 14, 2025)*. As explained above, although the New Funding Conditions may not be enforceable until or unless Freedom Network accepts a grant, the harm they cause is inflicted *at the time* Freedom Network applies for a grant—that time is tomorrow, February 24, 2026. *See* Supp'l Bruggeman Decl. ¶ 36. Moreover, as this court recognized, the Certification Provision imposes harm now even on parties that are not currently seeking grants. *See CWIT*, 778 F. Supp. 3d at 994-96.

5

### III. THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH IN FAVOR OF AN INJUNCTION

The final two injunction factors (the balance of equities and whether an injunction is in the public interest) merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[I]njunctions protecting First Amendment freedoms are always in the public interest." *City of Chicago v. Barr*, 961 F.3d 882, 887 (7th Cir. 2020); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) (citation omitted). The "same may be said of injunctions protecting the separation of powers." *CWIT*, 778 F. Supp. 3d at 993 (citing *City of Chicago v. Barr*, 961 F.3d 882, 918 (7th Cir. 2020)).

This Court has already concluded that a nationwide injunction as to the Certification Provision is necessary to provide complete relief to a federal grantee in order to protect its ability to collaborate with other grantees and contractors. *CWIT*, 778 F. Supp. 3d at 994-96; *Chicago Women in Trades v. Trump*, 25 C 2005, 2025 WL 3034056 (N.D. Ill. Oct. 30, 2025). The facts here similarly justify nationwide relief. (*See* ECF No. 70 at 21-23). And the scope of relief for Freedom Network's APA claims should also apply to all NOFO applicants because "[s]ection 705 of the APA authorizes a reviewing court to 'issue all necessary and appropriate process to postpone the effective date of an agency action' that is pending review," and therefore "the scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action." *Career Colleges & Schs. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), *cert. granted in part sub nom. Dep't of Educ. v. Career Colleges & Schs. of Texas*, 145 S. Ct. 1039 (2025), *and cert. dismissed sub nom. Dep't of Ed. v. Career Colleges & Sch. of TX*, 146 S. Ct. 59 (2025); *see also Am. Hosp. Ass'n v. Kennedy*, No. 2:25-CV-00600-LEW, 2025 WL 3754193, at *9 (D. Me. Dec. 29, 2025).

6

Thus, an injunction that extends to non-parties is "appropriate" where, as here, "the government relies on a 'categorical policy,' and when the facts would not require different relief for others similarly situated to the plaintiffs." *HIAS Inc. v. Trump*, 985 F.3d 309, 326 (4th Cir. 2021) (quoting *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 580 (2017)). The New Funding Conditions meet this test. Moreover, "[o]nce a constitutional violation is found, a federal court is required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Hills v. Gautreaux*, 425 U.S. 284, 293-94 (1976) (citations and internal quotation marks omitted). "It is not beyond the power of a court, in the appropriate circumstances, to issue a nationwide injunction." *Texas Top Cop Shop, Inc. v. Garland*, 758 F.Supp.3d 607, 661 (E.D. Tex. 2024) (quoting *Texas v. United States*, 809 F.3d 124, 188 (5th Cir. 2015)). Here, the scope of the constitutional violation is nationwide and affects all similarly situated grant recipients and sub-recipients. The scope of the restraining order should match the scope of the constitutional violations.

And should Freedom Network be forced to decline the OVC grants on account of the New Funding Conditions, it would lose access to funding that it would not be able to recoup. Accordingly, the balance of harms and public interest factors support an injunction. To obtain full and complete relief for Freedom Network, a nationwide restraining order is appropriate. *Trump v. CASA, Inc.*, 606 U.S. 831 (2025); *CWIT*, 778 F. Supp. 3d at 994-96; *CWIT*, 2025 WL 3034056, at *2–3.

## CONCLUSION

For the foregoing reasons, Freedom Network respectfully requests that the Court grant its motion for a temporary restraining order.

7

Dated: February 23, 2026   Respectfully Submitted,

/s/ *Jason P. Stiehl*
Jason P. Stiehl
CROWELL & MORING LLP
300 N. LaSalle Drive
Suite 2500
Chicago, IL 60654
Tel: (312) 840-3108
jstiehl@crowell.com

/s/ *Anuj Vohra*
Anuj Vohra
Keith J. Harrison*
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
avohra@crowell.com
kharrison@crowell.com

/s/ *Warrington Parker*
Warrington Parker*
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800
wparker@crowell.com

s/ *Sabrina A. Talukder*
Sabrina A. Talukder*
Kathryn J. Youker*
Lawyers' Committee for Civil Rights Under Law
1500 K Street, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
stalukder@lawyerscommittee.org
kyouker@lawyerscommittee.org

/s/ *Rachel Stevens*
Rachel Stevens*
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 590-5430
rstevens@crowell.com

Aneel L. Chablani (No. 6242658)
Ami D. Gandhi (No. 6282924)
Chicago Lawyers' Committee for Civil Rights
25 E. Washington St., Ste. 1300
Chicago, IL 60602
Telephone: (312) 630-9744
achablani@clccrul.org
agandhi@clccrul.org

*Attorneys for Freedom Network USA*
*\*Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

      I certify that on February 23, 2026, I electronically filed the foregoing document with the Clerk of the court of the United States District court for the Northern District of Illinois, using the CM/ECF filing system, which will forward notice to all counsel of record.

                                                                        /s/ *Jason P. Stiehl*
                                                                         Jason P. Stiehl