**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FREEDOM NETWORK USA, LIFE-SPAN, YOUNG WOMEN'S CHRISTIAN ASSOCIATION KALAMAZOO, AND WORKER JUSTICE CENTER OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>PRESIDENT DONALD J. TRUMP, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, OFFICE FOR VICTIMS OF CRIME, ACTING ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE TODD BLANCHE,<br><br>Defendants. | Case No. 1:25-cv-12419<br><br>Judge: Hon. Matthew F. Kennelly<br><br>JURY TRIAL DEMANDED |

**PLAINTIFFS' MOTION TO AMEND PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

**Page(s)**


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

I. THE NEW PLAINTIFFS ..... 2

II. CONGRESS PROVIDED FUNDS THROUGH THE TVPA TO COMBAT THE TRAFFICKING OF DIVERSE GROUPS OF PEOPLE ..... 4

III. THE GOVERNMENT TARGETS "DEI" AND UNILATERALLY ISSUES UNAUTHORIZED NEW FUNDING CONDITIONS FOR TVPA GRANTS ..... 4

IV. THE NEW PLAINTIFFS' WORK FURTHERS CONGRESSIONAL INTENT AND IS ADVERSELY IMPACTED BY THE NEW FUNDING CONDITIONS ..... 5

V. THE HARM TO PLAINTIFFS ..... 7

LEGAL STANDARD AND STANDING ..... 8

ARGUMENT ..... 9

I. THE COURT HAS ALREADY CONCLUDED THAT PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ON THE MERITS ..... 9

A. THE NEW PLAINTIFFS HAVE STANDING ..... 9

B. THE NEW FUNDING CONDITIONS VIOLATE THE SEPARATION OF POWERS AND THE SPENDING CLAUSE ..... 9

C. THE NEW FUNDING CONDITIONS VIOLATE THE ADMINISTRATIVE PROCEDURE ACT ..... 11

D. THE NOFO CERTIFICATION PROVISION VIOLATES THE FIRST AMENDMENT ..... 12

II. NEW PLAINTIFFS WILL BE IRREPARABLY HARMED ABSENT RELIEF ..... 13

III. THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH IN FAVOR OF AN INJUNCTION ..... 14

IV. THE SCOPE OF THE PRELIMINARY INJUNCTION SHOULD BE EXPANDED ..... 14

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACLU of Ill. v. Alvarez*,
679 F.3d 583 (7th Cir. 2012) ....................14

*Bevis v. City of Naperville*,
85 F.4th 1175 (7th Cir. 2023) ....................8

*California v. U.S. Dep't of Transp.*,
788 F. Supp. 3d 316 (D.R.I. 2025)....................11

*Chicago Women in Trades v. Trump*,
778 F. Supp. 3d 959 (N.D. Ill. 2025) ....................8, 11, 14

*City of Chicago v. Barr*,
961 F.3d 882 (7th Cir. 2020) ....................10

*City of Chicago v. Dept. of Justice*,
No. 25 C 13863, 2026 WL 114294 (N.D. Ill. Jan. 15, 2026) .................... *passim*

*City of Chicago v. Noem*,
25 CV 12765, 2025 WL 3251222 (N.D. Ill. Nov. 21, 2025)....................10, 11, 13

*City of Seattle v. Trump*,
808 F. Supp. 3d 1204 (W.D. Wash. 2025)....................8, 14

*Cnty. of Santa Clara v. Noem*,
25-cv-08330-WHO, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025) ....................10, 11, 14

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011) ....................13

*Housing Auth. of the City & Cnty. of S.F. v. Turner*,
25-cv-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025) ....................10, 14

*Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013)....................11, 14

*Massachusetts v. EPA*,
549 U.S. 498 (2007)....................9

*New York v. United States*,
505 U.S. 144 (1992)....................10

*Nken v. Holder*,
556 U.S. 418 (2009)....14

*State of Ill. v. FEMA*,
801 F. Supp. 3d 75 (D.R.I. 2025)....11

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....11

*Washington State Assoc. of Head Start v. RFK Jr.*,
C25-781-RSM, 2026 WL 35858 (W.D. Wash. Jan. 6, 2026)....8

**Statutes**

22 U.S.C. § 7101(a) ....4

False Claim Act....5, 6, 7, 8

Trafficking Victims Protection Act ....2, 3, 4, 5, 11

**Other Authorities**

First Amendment ....2, 12, 13, 14

Fifth Amendment....12

https://life-span.org/life-span-sponsors/....3

## INTRODUCTION

On March 23, 2026, this Court granted in part Plaintiff Freedom Network USA's ("Freedom Network") motion for a preliminary injunction, enjoining "enforcement of the J21 certification provision against all recipients of federal funding awarded by DOJ and order[ing] a stay under APA section 705 of OVC's decision to include the NOFO certification provision, NOFO discrimination condition, and NOFO immigration enforcement condition in the [FY25] Services for Victims of Human Trafficking NOFO." *See* Dkt. No. 90 at 52.[1]

Life-Span, Young Women's Christian Association Kalamazoo ("YWCA Kalamazoo"), and Worker Justice Center of New York ("WJCNY") (collectively, "New Plaintiffs," and with Freedom Network, "Plaintiffs") now ask the Court to amend its preliminary injunction to enjoin Defendants from enforcing the New Funding Conditions as to all of the Notices of Funding Opportunities ("NOFO" or "NOFOs"), or at a minimum, the FY25 Housing Assistance for Victims of Human Trafficking NOFO as well as the FY25 Service for Victims of Human Trafficking NOFO.

Some procedural history explains why amendment is necessary. As set forth in its Notice of Status of Grant Application, Freedom Network attempted to apply for the FY25 Service for Victims of Human Trafficking grant, but due to technical issues with the government's website did not timely complete the submission process.[2] *See* Dkt. No. 92. To cure potential standing issues resulting from its inability to submit its grant application, Freedom Network has today also moved this Court for permission to file a Second Amended Complaint to add the New Plaintiffs. *See* Dkt.

---

[1] Abbreviations and defined terms here have the same meaning as in the Court's March 23, 2026 Memorandum Opinion and Order, Dkt. No. 90, and in Plaintiff's February 20, 2026 Amended Motion For Preliminary Injunction, Dkt. No. 70.

[2] The government rejected Freedom Network's grant application, notwithstanding its request for a waiver based on the technical issues it encountered.

No. 100. Each of the New Plaintiffs applied for FY 2025 TVPA grants awarded by DOJ in reliance on this Court's order preliminarily enjoining enforcement of the New Funding Conditions in the FY25 Service for Victims of Human Trafficking grant.

Collectively, Plaintiffs now ask only that the Court continue its injunction based on the New Plaintiffs' standing and that it extend the preliminary injunction to enjoin Defendants from enforcing the New Funding Conditions in all seven NOFOs. What was true before remains so: the Executive Branch cannot usurp Congress's power of the purse to force its viewpoint on organizations that receive federal funding. Nor can the Executive Branch censor private speech. The New Funding Conditions run roughshod over these fundamental constitutional principles, depriving the New Plaintiffs of constitutional rights, and suffocating efforts to combat human trafficking and protect survivors as Congress intended. In addition, the New Funding Conditions violate the New Plaintiffs' First Amendment rights: the conditions are viewpoint-specific, they impose unconstitutional conditions, and they are vague and overbroad.

Our Constitution does not allow this. It did not allow this in March, when the Court issued its preliminary injunction order. It does not allow this now. The government's implementation of the New Funding Conditions threatens the New Plaintiffs' ability to fulfill their mission, the goals of their federal grants, and their privately funded work; and has already caused the New Plaintiffs the loss of partners and money. Plaintiffs thus request that the Court continue its preliminary injunction.

## FACTUAL BACKGROUND

### I. THE NEW PLAINTIFFS

Life-Span is a Chicago-based non-profit organization whose mission is to provide comprehensive services for survivors of domestic violence, sexual assault, and human trafficking,

and their children.[3] DOJ previously termed Life-Span's programs a "promising practice."[4] To support its "promising" programs, Life-Span has received funding from DOJ's OJP consistently for nearly 30 years, and that long-relied-on federal funding now comprises approximately 35% of its FY 2026 budget.[5] Life-Span is a direct and sub-recipient of numerous federal grants awarded by DOJ and other Executive Branch agencies.[6]

For 140 years, YWCA Kalamazoo has served as a lifeline and safety net for marginalized community members in Michigan. Its programs include crisis support centers, emergency shelter and transitional housing, legal advocacy, maternal and child health programs, and high-quality early childhood education, while also leading community efforts around racial justice, reproductive justice, and policy reform. YWCA Kalamazoo operates the only housing shelters in Michigan and Illinois open to all survivors of trafficking, including men and labor trafficking survivors, who are routinely excluded by most other providers.[7]

WJCNY is a nonprofit law firm that provides a wide range of civil legal services to agricultural workers and other low-wage workers.[8] For 26 years, WJCNY has litigated claims arising out of extreme forms of labor exploitation, such as human trafficking claims under the Trafficking Victims Protection Act ("TVPA"). WJCNY's anti-trafficking work has been supported in-part by OVC's Specialized Services for Trafficking Victims grants from approximately 2017 to 2020 and its Services for Victims of Human Trafficking grant from 2022 to March 2026.[9]

---

[3] *See* Declaration of Amy Fox, dated May 15, 2026 ("Fox Decl.") at ¶¶ 1, 2.

[4] *See* https://life-span.org/life-span-sponsors/ (last visited May 13, 2026).

[5] *See* Fox. Decl. at ¶ 6.

[6] *Id.* at ¶¶ 7-10.

[7] *See* Declaration of Susan Rosas, dated May 15, 2026 ("Rosas Decl.") at ¶¶ 2, 4, 10

[8] *See* Declaration of Alaina Evelyn Varvaloucas, dated May 15, 2026 ("Varvaloucas Decl.) at ¶¶ 2, 3

[9] *See* Varvaloucas Decl. at ¶¶ 2, 15

## II. CONGRESS PROVIDED FUNDS THROUGH THE TVPA TO COMBAT THE TRAFFICKING OF DIVERSE GROUPS OF PEOPLE

Congress enacted the TVPA to create a comprehensive response to modern slavery and human trafficking by focusing on protecting survivors, prosecuting traffickers, and preventing trafficking. 22 U.S.C. § 7101(a). As the Court has already acknowledged, Congress specifically directed that TVPA grants should serve a wide range of survivors, including women, children, and traditionally underserved populations that it defined "as those who 'face barriers in accessing and using victim services, and includes populations underserved because of geographic location, religion, sexual orientation, gender identity, underserved racial and ethnic populations, populations underserved because of special needs (such as language barriers, disabilities, alienage status, or age).'" Dkt. No. 90 at 3 (quoting 34 U.S.C. § 12291(a)(46)).

## III. THE GOVERNMENT TARGETS "DEI" AND UNILATERALLY ISSUES UNAUTHORIZED NEW FUNDING CONDITIONS FOR TVPA GRANTS

In issuing its March 23, 2026 Preliminary Injunction, the Court recognized that in issuing the Executive Orders and the NOFOs, Defendants have "expan[ded ]the types of conduct that the Executive now believes violates the federal civil rights and discrimination laws. The problem is that [Plaintiffs] are left without any information to shed light on the types of conduct that may now constitute 'illegal DEI.'" Dkt. No. 90 at 23. Despite that problem, on December 30, 2025, DOJ issued seven NOFOs that include the New Funding Conditions for TVPA-authorized grant programs.[10] These New Funding Conditions, as the Court noted, "'have nothing to do with the [TVPA] grant programs, as established by Congress,'" Dkt. No. 90 at 34, but if enforced, would effectively prohibit Plaintiffs from reaching underserved communities and effectuating the

[10] The New Funding Conditions are described in Freedom Network's Amended Motion for Preliminary Injunction, Dkt. No. 70 at 9-11; *see also* Dkt. No. 90 at 6-7.

purposes for which Congress designated TVPA funds.[11]

## IV. THE NEW PLAINTIFFS' WORK FURTHERS CONGRESSIONAL INTENT AND IS ADVERSELY IMPACTED BY THE NEW FUNDING CONDITIONS

The New Plaintiffs' direct service work for survivors of trafficking has historically been funded in large part through TVPA-authorized grants awarded by OVC.[12] And all three New Plaintiffs serve exactly the survivors Congress intended when it passed the TVPA.[13] The Court's injunction preventing DOJ from enforcing the New Funding Conditions with respect to the FY25 Services for Victims of Trafficking NOFO allowed the New Plaintiffs to apply for those funds with less risk of denied reimbursements or the threat of False Claim Act liability, although the New Plaintiffs are all aware that the injunction is not permanent.[14]

Even with the injunction in place, Life-Span had to choose between submitting an application that still came with risks given the lack of guidance from DOJ, or forgoing federal funding that would mean serving fewer clients.[15] Life-Span decided to apply for the FY25 Services for Victims of Trafficking NOFO but still censored it speech to reduce the likelihood that its grant would be flagged as somehow in violation of the New Funding Conditions.[16]

YWCA Kalamazoo similarly hesitated before applying for federal funding. Ultimately, YWCA Kalamazoo applied for two grants: FY25 Services for Victims of Trafficking NOFO and FY25 Housing Assistance for Victims of Human Trafficking NOFO, knowing that DOJ was enjoined from enforcing the New Funding Condition as to only the first NOFO.[17] YWCA

---

[11] *See* Fox Decl. at ¶¶ 25, 39; Rosas Decl. at ¶¶ 21, 53, Varvaloucas Decl. at ¶¶ 27, 29

[12] *See* Fox Decl. at ¶ 6; Rosas Decl. ¶ 14; Varvaloucas Decl. ¶ 14.

[13] *See* Fox Decl. at ¶ 2; Rosas Decl. ¶¶ 2, 4; Varvaloucas Decl. ¶¶ 2, 3.

[14] *See* Fox Decl. at ¶ 36; Rosas Decl. ¶ 41; Varvaloucas Decl. ¶ 38.

[15] *See* Fox Decl. ¶¶ 22, 24, 33, 35.

[16] *Id.* at ¶¶ 38-39.

[17] *See* Rosas Decl. ¶ 41.

Kalamazoo is the only provider of comprehensive and coordinated services for survivors in the Midwest and has a unique focus on meeting survivors' housing needs.[18] It made the decision to apply for the FY25 Housing Assistance for Victims of Human Trafficking NOFO because it decided it would be more harmful to have to shut down than avoid triggering the New Funding Conditions.[19] And when it applied to both NOFOs, YWCA Kalamazoo changed its words and left out words, like "undocumented" and "equity" because it did not know what would be considered permissible.[20]

And finally, WJCNY applied for significantly less funding from the FY25 Services for Victims of Human Trafficking NOFO than it needed because, even with the Court's injunction, it could not risk higher denials of reimbursement that would be possible if it sought more money.[21] Like the other New Plaintiffs, WJCNY also had to censor the words in its application—changing how it previously described its staff so they were no longer identified as "culturally competent" and avoiding other words that might prompt a False Claim Act investigation.[22]

The impact of the New Funding Conditions on the ability of the New Plaintiffs to effectively serve survivors cannot be overstated. Just like Freedom Network, the New Plaintiffs face the Hobson's choice of forgoing federal funding which would jeopardize their existence and threaten the safety of survivors, or risk relinquishing their constitutional rights and the right to be free from arbitrary enforcement of the New Funding Conditions.

---

[18] *Id.* at ¶¶ 6-8.

[19] *Id.* at ¶¶ 43, 44, 50.

[20] *Id.* at ¶¶ 47-49.

[21] *See* Varvaloucas Decl. ¶ 40.

[22] *Id.* at ¶ 44.

## V. THE HARM TO PLAINTIFFS

The Court has already found that because of the certification provisions in the Executive Orders and the NOFOs "Freedom Network and other grantees are thus put in a difficult and perhaps impossible position. Without any guidance on what programs may 'promote DEI,' Freedom Network must attempt to revise its programs to comply with the certification provisions, decline to make a certification and thus lose its grants (and not receive any grants in the future), or risk making a certification that the government will deem false, subjecting Freedom Network to liability under the False Claims Act." Dkt. No. 90 at 23.

The Court has also already found that, at the preliminary pre-application stage, the New Funding Conditions harmed Freedom Network by forcing it to choose between pursuing its mission and risk running afoul of the New Funding Conditions, or abandoning "its desired mission and tailor[ing] its application in accordance with the funding conditions to preserve its chance at receiving federal funding." Dkt. No. 90 at 18.

As explained above, these same harms apply to the New Plaintiffs, but to a greater extent now. First, at the pre-application stage, they already had to make the difficult choice of whether to apply for funding under the NOFOs that are not currently covered by the preliminary injunction; most did not because the risks were too great.[23] Second, they had to decide whether to apply for funding under the FY25 Services for Victims of Trafficking NOFO—a choice made easier because of this Court's preliminary injunction.[24] Third, they have to make do with less because even though they applied for funding, WJCNY sought less money so it could mitigate the risk that it might be denied reimbursement based on the Discrimination Condition and the Immigration Enforcement

---

[23] *See* Fox Decl. at ¶ 32; Rosas Decl. at ¶ 38; Varvaloucas Decl. at ¶¶ 33, 34.

[24] *See* Fox Decl. ¶¶ 35, 36; Rosas Decl. ¶ 41; Varvaloucas Decl. ¶ 38.

Condition.[25] Fourth, they self-censored even when applying for the FY25 Services for Victims of Trafficking NOFO, eliminating words they used in the past to limit the risk of denied reimbursements and False Claim Act investigations.[26] And finally, if they are awarded funding, they must decide whether they will accept the funds and live under the shadow of the New Funding Conditions or decline funding and reduce services or shut down entirely.[27]

## LEGAL STANDARD AND STANDING

To obtain a preliminary injunction, Plaintiffs must establish standing and demonstrate that (1) they are likely to succeed on the merits, (2) they will be irreparably harmed absent an injunction, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023). This Court and others have already concluded that preliminary injunctions are warranted under similar circumstances. *See, e.g.*, Dkt. No. 90; *City of Chicago v. Dept. of Justice,* No. 25 C 13863, 2026 WL 114294 (N.D. Ill. Jan. 15, 2026); *Chicago Women in Trades v. Trump*, 778 F. Supp. 3d 959 (N.D. Ill. 2025) ("*CWIT*"); *Washington State Assoc. of Head Start v. RFK Jr.*, C25-781-RSM, 2026 WL 35858 (W.D. Wash. Jan. 6, 2026); *City of Seattle v. Trump*, 808 F. Supp. 3d 1204, 1211-1212 (W.D. Wash. 2025).

The New Plaintiffs have standing to challenge the New Funding Conditions. The New Plaintiffs (1) have "suffered a concrete and particularized injury that is either actual or imminent," (2) "the injury is fairly traceable to the defendant," and (3) "it is likely that a favorable decision will redress that injury" as to all NOFOs. *Massachusetts v. EPA*, 549 U.S. 498, 517 (2007). The Court previously found Freedom Network had standing to challenge the New Funding Conditions.

[25] *See* Varvaloucas Decl. ¶ 40.

[26] *See* Fox Decl. ¶¶ 39-39; Rosas Decl. ¶¶ 47-49; Varvaloucas Decl. ¶ 44.

[27] *See* Fox Decl. ¶ 41.

*See* Dkt. No. 90 at 19. That same reasoning applies here, where New Plaintiffs have successfully submitted grant applications for both the FY25 Services for Victims of Human Trafficking NOFO and the FY25 Housing Assistance for Victims of Trafficking NOFO.

## ARGUMENT

## I. THE COURT HAS ALREADY CONCLUDED THAT PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION ON THE MERITS

### A. The New Plaintiffs Have Standing

The same reasons the Court held Freedom Network had standing to challenge the New Funding Conditions apply here. The New Plaintiffs had to self-censor in their NOFO applications,[28] and had to decide whether to apply for the NOFOs not covered by the injunction.[29] Those injuries were sufficient to confer standing on Freedom Network and should be for the New Plaintiffs as well. *See* Dkt. 90 at 12-13. And the NOFO Certification Provision, like the J21 Certification Provision "*arguably* reaches beyond the federal civil rights laws and proscribes Freedom Network's desired conduct." *Id.* at 14. In confirming that Freedom Network had standing to challenge the J21 Certification Provisions, the Court explained that "Freedom Network has plausibly alleged that the government has taken a wider enforcement posture that might sweep in Freedom Network's desired course of conduct. That suffices to establish that it likely has standing to challenge the J21 certification provision." *Id.* This same analysis applies with respect to the New Plaintiffs and their standing to challenge the NOFO Certification Provision.

### B. The New Funding Conditions Violate the Separation of Powers and the Spending Clause

The Court has also already concluded that the New Funding Conditions violate both the separation of powers and the Spending Clause. Dkt. No. 90 at 33-34. In doing so, the Court

[28] *See* Fox Decl. ¶¶ 39-39; Rosas Decl. ¶¶ 47-49; Varvaloucas Decl. ¶ 44.

[29] *See* Fox Decl. at ¶ 32; Rosas Decl. at ¶ 38; Varvaloucas Decl. at ¶¶ 33, 34

explained that with respect to the Discrimination Provision and the NOFO Certification Provision:

> [t]he aims of the TVPA and its grant-related provisions have no relationship to the conditions that DOJ seeks to attach to the grants. The government identifies no authority in the TVPA or another statute that requires the certifications at issue here, conditions grants on compliance with anti-discrimination laws, or prohibits federal grant recipients from engaging in equity-related work. Rather, in the TVPA, Congress did not reference federal anti-discrimination laws or employ the term "DEI" at all; did not specify that grant recipients should or should not conduct DEI; and did not prohibit "'equity-related' grants."

*Id.* The Court concluded that the "imposition of conditions that are not authorized by Congress in the enabling acts for the grants or any other federal statute violates the separation of powers and the Spending Clause." *Id.* And with respect to the Immigration Enforcement Condition, the Court also concluded that Freedom Network "has similarly demonstrated a likelihood of success on its separation-of-powers and Spending Clause claims." *Id.* 34-35.

The New Plaintiffs' claims regarding the New Funding Conditions mirror the claims asserted by Freedom Network; the New Funding Conditions are the same; therefore the Court's prior findings should apply with equal weight and support continuing the preliminary injunction. *See also New York v. United States*, 505 U.S. 144, 172 (1992); *City of Chicago*, 2026 WL 114294 at *10 (enjoining the NOFOs at issue in this case); *City of Chicago v. Noem,* 25 CV 12765*,* 2025 WL 3251222 (N.D. Ill. Nov. 21, 2025) (granting preliminary injunction as to the EOs at issue in this case and similar funding conditions); *Cnty. of Santa Clara v. Noem*, 25-cv-08330-WHO, 2025 WL 3251660 (N.D. Cal. Nov. 21, 2025) (same); *Housing Auth. of the City & Cnty. of S.F. v. Turner*, 25-cv-08859-JST, 2025 WL 3187761 (N.D. Cal. Nov. 14, 2025) (same); *see also City of Chicago v. Barr,* 961 F.3d 882, 931 (7th Cir. 2020) (affirming grant of preliminary injunction); *CWIT*, 778 F. Supp. 3d at 979 ("To abide by separation of powers, the Executive Branch must respect congressional appropriations; it lacks the authority to condition the payment of grants on its political priorities, except when Congress has delegated such authority.").

### C. The New Funding Conditions Violate the Administrative Procedure Act

This Court has already found that the New Funding Conditions violate the Constitution and the APA, Dkt. No. 90 at 52, and therefore presumptively cause injury. *City of Chicago,* 2026 WL 114294, at *10; *Noem,* 2025 WL 3251222, at *9 (finding APA violations for similar grant conditions); *Cnty. of Santa Clara*, 2025 WL 3251660, at *28-29 *California v. U.S. Dep't of Transp.*, 788 F. Supp. 3d 316, 322 (D.R.I. 2025) (holding that agency lacked authority "to impose immigration enforcement conditions"); *State of Ill. v. FEMA*, 801 F. Supp. 3d 75 (D.R.I. 2025) (finding similar conditions violate the APA).

Because the New Plaintiffs' injuries are the result of the New Funding Conditions, an injunction would redress those injuries—as this Court has already concluded. *See generally* Dkt. No. 90; *see also Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606–07 (2013) (holding that the plaintiff suffered a "constitutionally cognizable injury" where he refused to waive his constitutional rights and was therefore denied a discretionary benefit); *TransUnion LLC v. Ramirez,* 594 U.S. 413, 415, 435 (2021) (noting that a "material risk of future harm can satisfy the [injury-in-fact] requirement," should the "'risk of harm' [be] sufficiently imminent and substantial.").

Again, nothing has changed since March to justify a different result now. The government has still failed to provide any explanation as to how grant applicants can adhere to both the New Funding Conditions and the TVPA without violating federal law and the terms of the NOFO themselves. *See* Dkt. No. 90 at 47. The New Funding Conditions remain "arbitrary and capricious." *Id.* at 48.

### D. The NOFO Certification Provision Violates the First Amendment[30]

As Freedom Network has explained,[31] and the Court has accepted at this stage, the NOFO Certification Provision, like the EO Certification Provision, violates the First Amendment. Dkt. No. 90 at 21-23. The government has made no attempt to define what is or is not prohibited by the Discrimination Condition or the Immigration Enforcement Condition. And the potential for arbitrary and discriminatory enforcement is demonstrated by the fact that New Plaintiffs do not know if their day-to-day anti-trafficking work (which has historically been funded by OVC) triggers the New Funding Conditions.[32]

At minimum, the term "equity" alone in YWCA Kalamazoo's mission statement could trigger the NOFO Certification Provision.[33] The fact that Life-Span serves more survivors from Chicago than other parts of Cook County, Illinois could be seen as "favoring" a "majority group" in a "given area" in violation of the Discrimination Condition.[34] And WJCNY does not know if transporting clients to medical appointments "indirectly" violates federal immigration law and triggers the Immigration Enforcement Condition.[35] Just as the Court found that Freedom Network should not have to operate under such uncertainty or be "put in a difficult and perhaps impossible position," so too should the New Plaintiffs be spared that harm by amending the preliminary injunction. Dkt. No. 90 at 23.

---

[30] The Court found that Freedom Network was not likely to succeed on its First Amendment claims related to the Discrimination Condition or the Immigration Enforcement Condition or any of its Fifth Amendment claim, so Plaintiffs do not press those same arguments here. But Plaintiffs do not waive any of their First Amendment or Fifth Amendment claims with respect to the permanent relief sought through the Second Amended Complaint. *See* Dkt. No. 100.

[31] *See* Dkt. 70 at 16-19.

[32] *See, e.g.*, Fox Decl. ¶¶ 22, 24-26, 33-34; Rosas Decl. ¶¶ 30, 32-35; Varvaloucas Decl. ¶¶ 39-40.

[33] *See* Rosas Decl. ¶ 3.

[34] *See* Fox Decl. ¶ 26.

[35] *See* Varvaloucas Decl. ¶ 32

Finally, like Freedom Network, the New Plaintiffs receive both federal and non-federal funding and the NOFO Certification Provision infringes the New Plaintiffs' First Amendment rights because it regulates privately funded speech.[36] This cannot be allowed, because as the Court explained "the government may not impose a condition on its funding that affects 'protected conduct outside the scope of the federally funded program.'" Dkt. No. 90 at 21-22 (quoting *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.* (*AID*), 570 U.S. 205, 218 (2013)).

## II. <u>NEW PLAINTIFFS WILL BE IRREPARABLY HARMED ABSENT RELIEF</u>

The New Funding Conditions irreparably harm the New Plaintiffs, just as the Court concluded they harmed Freedom Network. Dkt. No. 90 at 48-49. The Court explained that Freedom Network was "likely to suffer irreparable harm if the certification provisions, . . . NOFO discrimination condition and NOFO immigration enforcement condition are enforced because the Court has concluded such enforcement would violate the separation of powers." Dkt. No. 90 at 49. So too here. As explained above, the New Funding Conditions continue to violate the Constitution, and therefore "[n]o further showing of irreparable harm is needed." *Id.*, *see also City of Chicago*, 2026 WL 114294, at *10; *Noem*, 2025 WL 3251222, at *9; *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) ("[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.") (citation omitted).

The New Funding Conditions have already caused concrete, irreparable harm to the New Plaintiffs and will continue to do so unless enjoined. *See generally City of Chicago and City of St. Paul v. U.S. Dep't of Just.,* No. 25 C 13863, 2026 WL 114294, at * 10 (enjoining similar unlawful conditions imposed at the NOFO stage across all stages of the application process,

---

[36] *See* Fox Decl. ¶ 6; Rosas Decl. ¶ 12; Varvaloucas Decl. ¶ 14.

including after plaintiffs had already submitted applications with those conditions announced); see *also Chicago v. Noem*; 2026 WL 114294; *City and County of San Francisco v. U.S. Dep't of Just., No.*; 3:25-cv-09277-JD, 2025 WL 4220279 (N.D. Cal. Dec. 12, 2025) (enjoining near-identical conditions on all stages of the grant application process); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606–07 (2013); *Cnty. of Santa Clara*, 2025 WL 3251660, at *43; *Turner*, 2025 WL 3187761, at *19; *City of Seattle v. Trump*, 808 F. Supp. 3d 1204, 1211-1212 (W.D. Wash. 2025).

## III. THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH IN FAVOR OF AN INJUNCTION

The final two injunction factors (the balance of equities and the public interest) merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[I]njunctions protecting First Amendment freedoms are always in the public interest." *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012) (citation omitted). The "same may be said of injunctions protecting the separation of powers." *CWIT*, 778 F. Supp. 3d at 993 (citing *City of Chicago v. Barr*, 961 F.3d 882, 918 (7th Cir. 2020)). And should the New Plaintiffs be forced to decline the OVC grants on account of the New Funding Conditions, they would lose access to funding that they would not be able to recoup. Accordingly, the balance of harms and public interest factors support an injunction. *See also* Dkt. No. 90 at 50.

## IV. THE SCOPE OF THE PRELIMINARY INJUNCTION SHOULD BE EXPANDED[37]

This Court has already found the New Funding Conditions to be unconstitutional and in violation of the APA. *See* Dkt. No. 90. This Court limited the scope of its injunction regarding the

[37] Plaintiffs make this argument only with respect to the scope of the preliminary injunction enjoining enforcement of the NOFOs. As reflected in the proposed order that will accompany this motion, Plaintiffs are not seeking to amend or expand the injunction with respect to the Executive Orders.

NOFOs to the FY25 Services for Victims of Trafficking NOFO because it was "the one NOFO that [affected] Freedom Network's grant applications according to its allegations." *Id.* at 19. YWCA Kalamazoo also applied for the FY25 Housing Assistance for Victims of Human Trafficking NOFO,[38] and all of the New Plaintiffs have expressed that they may not be able to refer clients to organizations that applied to NOFOs that are not covered by the preliminary injunction.[39]

As a result, to afford complete relief to the New Plaintiffs and consistent with Section 705 of the APA, the Court's injunction should be extended to enjoin Defendants from enforcing the New Funding Conditions in all seven NOFOs. This would allow the New Plaintiffs to openly collaborate and refer clients to other OVC grantees, because without that protection, the New Plaintiffs will not refer survivors or their families to other OVC grantees that accepted a TVPA-authorized award with the New Funding Conditions.[40]

This Court has already agreed that section 705 of the APA "is naturally read to authorize courts to postpone or stay the agency action itself, rather than enjoining its enforcement as to particular plaintiffs." Dkt. No. 90 at 52. That same reasoning empowers the Court to enjoin Defendants from enforcing the New Funding Conditions across the NOFOs, since all the New Plaintiffs need that relief to be able to serve their clients.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant its motion to amend the preliminary injunction order.

---

[38] *See* Rosas Decl. ¶ 41.

[39] *See* Fox Decl. ¶ 44; Rosas Decl. ¶ 52; Varvaloucas Decl. ¶ 47.

[40] *Id.*

Dated: May 15, 2025

Respectfully Submitted,

/s/ *Jason P. Stiehl*
Jason P. Stiehl
CROWELL & MORING LLP
300 N. LaSalle Drive
Suite 2500
Chicago, IL 60654
Tel: (312) 840-3108
jstiehl@crowell.com

/s/ *Warrington Parker*
Warrington Parker*
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800
wparker@crowell.com

/s/ *Rachel Stevens*
Rachel Stevens*
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 590-5430
rstevens@crowell.com

/s/ *Anuj Vohra*
Anuj Vohra
Keith J. Harrison*
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
avohra@crowell.com
kharrison@crowell.com

s/ *Sabrina A. Talukder*
Sabrina A. Talukder*
Kathryn J. Youker*
Lawyers' Committee for Civil Rights Under Law
1500 K Street, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600
stalukder@lawyerscommittee.org
kyouker@lawyerscommittee.org

Aneel L. Chablani (No. 6242658)
Ami D. Gandhi (No. 6282924)
Chicago Lawyers' Committee for Civil Rights
25 E. Washington St., Ste. 1300
Chicago, IL 60602
Telephone: (312) 630-9744
achablani@clccrul.org
agandhi@clccrul.org

*Attorneys for Plaintiffs*
**Admitted Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I certify that on May 15, 2026, I electronically filed the foregoing document with the Clerk of the court of the United States District court for the Northern District of Illinois, using the CM/ECF filing system, which will forward notice to all counsel of record.

/s/ *Jason P. Stiehl*
Jason P. Stiehl