**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| FREEDOM NETWORK USA, LIFE-SPAN, YOUNG WOMEN'S CHRISTIAN ASSOCIATION KALAMAZOO, AND WORKER JUSTICE CENTER OF NEW YORK, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| PRESIDENT DONALD J. TRUMP, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, OFFICE FOR VICTIMS OF CRIME, ACTING ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE TODD BLANCHE,[1] | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 25 C 12419 |
| Defendants. | ) ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

Freedom Network USA, Life-Span, Young Women's Christian Association

Kalamazoo (YWCA Kalamazoo), and the Worker Justice Center of New York

(WJCNY) are non-profit organizations working to end human trafficking through

providing direct services, or, in the case of Freedom Network, connecting advocates,

service providers, and survivors working against human trafficking.  The plaintiffs

---

[1] The Court substitutes Todd Blanche, Acting Attorney General for the U.S. Department of Justice, for former Attorney General Pamela Bondi.  *See* Fed. R. Civ. P. 25(d).

allege that several provisions of Executive Orders 14151 and 14173 and other provisions of the Fiscal Year 2025 Notices of Funding Opportunities (NOFOs) for certain grants under the Trafficking Victims Protection Act (TVPA) violate the First Amendment, the Fifth Amendment, the separation of powers, and the Spending Clause. The plaintiffs also allege that the conditions attached to the NOFOs (the NOFO conditions) violate the Administrative Procedure Act (APA).

Freedom Network moved for a preliminary injunction, a motion the Court granted in part in March 2026. *See Freedom Network USA v. Trump*, No. 25 C 12419, 2026 WL 800392, at *1 (N.D. Ill. Mar. 23, 2026). Freedom Network was then unable to submit a timely grant application for funding. Life-Span, YWCA Kalamazoo, and the WJCNY then joined the case as new plaintiffs. The plaintiffs ask the Court to amend the preliminary injunction to extend it to six additional NOFOs issued by the Office of Victims of Crime (OVC). For the reasons below, the Court grants in part the motion to amend the preliminary injunction.

### Background

Freedom Network USA describes itself as "the nation's largest non-profit coalition of advocates, service providers, and survivors working to end human trafficking and protect survivors . . . by providing equity-driven training and technical assistance to thousands of private and public stakeholders . . . as well as direct services to thousands of survivors each year[.]" Second Am. Compl. ¶ 2 (footnote omitted).

Life-Span is a non-profit based in Chicago that provides comprehensive services to survivors and the children of survivors of human trafficking, domestic

2

violence, and sexual assault. Life-Span aims to "assist survivors throughout Cook County, Illinois (with a focus on Chicago) in overcoming the underlying vulnerabilities that traffickers exploit, such as poverty, lack of housing, and legal issues." *Id.* ¶ 29.

YWCA Kalamazoo, a member of Freedom Network, operates the only housing shelters in Michigan and Illinois open to all survivors of trafficking, including men and survivors of labor trafficking. It also operates the only comprehensive anti-trafficking services program in Michigan, providing case management, legal representation, and trauma-informed therapy. Its "mission is to eliminate racism, empower women, and promote peace, justice, freedom, and dignity for all." *Id.* ¶ 30.

WJCNY is a legal aid organization serving low-wage and agricultural workers in upstate New York. It conducts outreach at farm labor camps and provides clients with legal services related to labor, employment, housing, benefits, trafficking, taxes, and immigration. It litigates human trafficking claims under the TVPA and has supported the Department of Justice's (DOJ) anti-trafficking prosecution efforts.

The TVPA is a federal statute that defines "sex trafficking" and "severe forms of trafficking in persons[.]" 22 U.S.C. §§ 7102(11)–(12). The statute seeks to prevent trafficking, prosecute traffickers, and protect survivors. *See generally id.* § 7101. Under the TVPA, "[s]ubject to the availability of appropriations, the Attorney General may make grants to States, Indian tribes, units of local government, and nonprofit, nongovernmental victims' service organizations to develop, expand, or strengthen victim service programs for victims of human trafficking[.]" *Id.* § 7105(b)(2)(A). For more background on the aims of the statute and its provisions, the Court refers readers to its prior opinion in this case. *See Freedom Network*, 2026 WL 800392, at

3

*1, *14–*17.

In fiscal year 2025, Congress appropriated $88 million for services for trafficking victims under 22 U.S.C. § 7105(b). The OVC, a component of the DOJ, administers grants under the TVPA.

Freedom Network has consistently applied for and been awarded federal funding since 2017. Seventy percent of Freedom Network's funding comes through federal funding appropriated by Congress pursuant to the TVPA and awarded through the OVC. Life-Span has received federal funding from the DOJ for about thirty years, and thirty-five percent of its budget comprises federal funding. WJCNY has also received federal funding for its anti-trafficking work, with its first award in 2017. YWCA likewise received federal funding under two fiscal year 2022 and 2023 OVC grants for services and housing for victims of human trafficking.

## A. Challenged provisions

In this suit, the plaintiffs challenge three provisions of two executive orders and three funding conditions included in DOJ's notices of funding opportunity (NOFOs) for grants under the TVPA. These provisions were discussed in greater detail in the Court's previous opinion. *See Freedom Network*, 2026 WL 800392, at *2–*5.

The plaintiffs challenge provisions of two executive orders related to diversity, equity, and inclusion (DEI). *See* Exec. Order No. 14151, Ending Radical and Wasteful Government DEI Programs and Preferencing, 90 Fed. Reg. 8339 (Jan. 20, 2025) (the J20 Order); Exec. Order No. 14173, Ending Illegal Discrimination and Restoring Merit-Based Opportunity, 90 Fed. Reg. 8633 (Jan. 21, 2025) (the J21 Order).

First, the plaintiffs challenge section 2(b)(i) of the J20 Order (the J20

4

termination provision). That section provides:

> Each agency, department, or commission head, in consultation with the Attorney General, the Director of OMB [Office of Management and Budget], and the Director of OPM [Office of Personnel Management], as appropriate, shall take the following actions within sixty days of this order: . . . terminate, to the maximum extent allowed by law, all . . . "equity-related" grants or contracts[.]

Exec. Order 14151, 90 Fed. Reg. 8339, § 2(b)(i).

The plaintiffs also challenge two provisions of the J21 Order. Section 3(c)(iii) of the J21 Order (the J21 termination provision) provides:

> The Director of the Office of Management and Budget (OMB), with the assistance of the Attorney General as requested, shall: . . . Terminate all "diversity," "equity," "equitable decision-making," "equitable deployment of financial and technical assistance," "advancing equity," and like mandates, requirements, programs, or activities, as appropriate.

Exec. Order 14173, 90 Fed. Reg. 8633, § 3(c)(iii). Section 3(b)(iv) of the J21 Order (the J21 certification provision) states that "[t]he head of each agency shall include in every contract or grant award: . . . A term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." *Id.* § 3(b)(iv).

In addition, the plaintiffs challenge three conditions present in the seven NOFOs announcing grant funding pursuant to the TVPA and released by OVC in December 2025.

First, the NOFOs contain an immigration enforcement condition defining an unallowable costs that will not be funded as:

> any program or activity, at any tier that, directly or indirectly, violates (or promotes or facilitates the violation of) federal immigration law (including 8 U.S.C. § 1373) or impedes or hinders the enforcement of federal immigration law—including by failing to comply with 8 U.S.C. § 1373, give access to DHS agents, or honor DHS requests and provide requested

5

notice to DHS agents.

Pl.'s Mot. to Suppl., Ex. A at 11.  Second, the NOFO's discrimination condition defines as unallowable costs:

> any program or activity, at any tier that violates any applicable Federal civil rights or nondiscrimination law.  This includes violations that—(1) indirectly violate the law, including by promoting or facilitating violations; or (2) unlawfully favor individuals in any race or protected group, including on majority or minority, or privileged or unprivileged, basis, within a given area, population, or sector.

*Id.*  Finally, the NOFO includes a certification provision, which mirrors the J21 certification provision and states that:

> Compliance with Federal civil rights and nondiscrimination laws is material to the government's decision to make any award and payment under this program, including for purposes of the False Claims Act, and each recipient will be required to certify (in its acceptance of the conditions of the award) that it does not operate any programs (including programs having components related to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

*Id.* at 30.  The False Claims Act, 31 U.S.C. § 3729, provides that a person who "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government" is "liable to the United States government for a civil penalty . . . plus 3 times the amount of damages which the Government sustains because of the act of that person."  31 U.S.C. § 3729(a)(1)(G).

## B.      Impact of the Executive Orders and NOFO conditions

In January 2025, a DOJ subcontractor, Inner City Fund, sent Freedom Network a list of words that "cannot appear in any Office for Victim of Crime materials (i.e. web pages, training content, presentations, etc.)" because they are "terms or words in conflict with recent Executive Orders."  *See* Second Am. Compl., Ex. C (listing words

6

including DEI, diversity, gender, identity, LGBTQ, minority populations, race/racial, pronouns, and trans). The list was entitled "DOJ-Office of Justice Programs (OJP) Guidance." *Id.* Freedom Network submits that it may not use these words in its federally funded work. Some of the words appear in its mission statement and "in every single training it provides as a national training and technical assistance provider." *Id.* ¶ 106.

Freedom Network alleges specific instances in which OVC ordered it to remove certain terms, including "colonial systems," "oppression," and "restorative justice," from a privately funded, survivor-led presentation and from a form assessing grants provided under Freedom Network's Housing Training and Technical Assistance Project. *Freedom Network*, 2026 WL 800392, at *4. OVC also told Freedom Network it could not host a webinar on housing for immigrant survivors that would address race and gender equity.

Freedom Network explains that stakeholders pulled out of its annual Anti-Trafficking Conference to avoid having their own federal funding withdrawn. Two members of Freedom Network's board of directors have resigned due to concerns about their employers' federal funding, and two subcontractors have terminated subcontracts with Freedom Network.

The new plaintiffs have also been impacted by the challenged conditions. Corporate sponsors of YWCA Kalamazoo have asked it to alter its identification as an equity-driven organization. Private funders have reconsidered funding YWCA and have delayed funding. Some fourteen landlords have withdrawn from partnerships with YWCA's transitional housing program, and it no longer receives referrals from law

enforcement agencies.

WJCNY requested seventy percent less federal funding than in previous years because it wanted to ensure that it could sustain operations in the face of a denied reimbursement.  Second Am. Compl. ¶ 147.  As a result, WJCNY cannot hire additional staff, diminishing its ability to take on new clients and provide services to existing clients.  Due to concerns about immigration enforcement and client confidentiality, WJCNY has also stopped referring clients to local law enforcement for civil investigation of trafficking.

Life-Span similarly decided not to seek OVC funding for an immigration attorney because of potential conflict with the immigration enforcement condition attached to the NOFOs.  Mot. to Amend Prelim. Inj., Fox Decl., ¶ 40.

All of the new plaintiffs are uncertain as to what the NOFO and J21 certifications prohibit, because the conditions do not define "diversity," "equity," and "inclusion."  The organizations therefore fear False Claims Act investigations that may result in loss of funding and an inability to continue serving clients.  In the interim, the organizations are cautious about taking on new clients whom they may ultimately be unable to serve because of denied reimbursements.

## C.    Procedural history

In October 2025, Freedom Network filed the present lawsuit seeking declaratory and injunctive relief under the Constitution and the APA.  OVC issued the FY2025 Services for Victims of Human Trafficking NOFO (Services NOFO) in December 2025.  Freedom Network then moved for a preliminary injunction.  It amended its complaint and motion for a preliminary injunction in February 2026.  It

8

filed an emergency motion for a temporary restraining order on February 23, 2026, which the Court granted after a hearing on February 24, 2026. The Court then extended that order through March 24, 2026.

Freedom Network planned to apply for two grants under the Services NOFO and contended that it could not submit an effective grant application without using language prohibited by OVC. It brought claims regarding the Executive Orders and NOFO conditions under the First Amendment, the Due Process Clause, the Spending Clause, and the separation of powers. It also challenged the NOFO conditions under the APA.

The Court granted in part Freedom Network's request for a preliminary injunction. It held that Freedom Network demonstrated a likelihood of success on the merits of its First Amendment challenge to the J21 certification provision and the NOFO certification provision, as well as its separation of powers and Spending Clause challenges to the NOFO conditions, the J20 termination provision, and the J21 certification provision. Freedom Network also demonstrated a likelihood of success on its APA challenge to the NOFO conditions. The other preliminary injunction factors favored Freedom Network, warranting an injunction.

The scope of the Court's preliminary injunction, however, was not as broad as Freedom Network requested. It sought an injunction against the funding conditions in all seven trafficking-related NOFOs issued by the OVC, but it planned to apply for funding under one NOFO. The Court held that "Freedom Network [only] has standing to challenge the funding conditions in the Services NOFO—the one NOFO that will affect Freedom Network's grant applications according to its allegations[.]" *Freedom*

9

*Network*, 2026 WL 800392, at *9.  Freedom Network did not demonstrate a sufficiently concrete harm to its collaboration with other organizations from the funding conditions in the other NOFOs, as "that chilling effect—and the accompanying harm to Freedom Network—would happen only if and when the prospective collaborator receives and accepts the grant. . . [a] possibility . . . too speculative to support Freedom Network's standing to challenge the funding conditions in NOFOs that will not directly affect its grant applications "  *Id.* at *8.[2]

Still, Freedom Network sought relief under the APA, which permits vacatur of an agency action rather than enjoining enforcement of the action against specific plaintiffs.  *See* 5 U.S.C. §§ 705–06; *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 830–31 (Kavanaugh, J., concurring).  The Court stayed the OVC's decision to include the NOFO conditions in the Services NOFO and ordered that the conditions not be used to evaluate any grant applications under that NOFO. *See* Dkt. 89.

The Court also enjoined enforcement of the J21 certification provision against all recipients of federal funding from the DOJ.  *See id.*  If the injunction was limited to Freedom Network, the Court reasoned, it would face a barrier to collaborating with organizations required to make the certification and likely to avoid associating with Freedom Network due to its speech.  *Freedom Network*, 2026 WL 800392, at *22. Additionally, the Court enjoined termination of any grant funding under the TVPA pursuant to the J20 termination provision.  *See id.* at *17 (explaining the facial

---

[2] The Court also held that Freedom Network lacked standing to challenge the J21 termination provision, which, on its face, seemed to address government agencies rather than private parties.  *Freedom Network*, 2026 WL 800392, at *7–*8.

separation of powers challenge brought against this provision).

After the Court issued its preliminary injunction order, Freedom Network submitted a "Notice of Status of Grant Application." *See* dkt. 92. It explained that it completed its grant application under the Services NOFO, but "technical issues with the government website during the submission process [] resulted in the website closing the submission function before" it submitted its application. *Id.* The government would not consider its application. *See* dkt. 100 ¶ 7.

To preserve the Court's jurisdiction, Freedom Network moved to file a second amended complaint and add three new plaintiffs, Life-Span, YWCA Kalamazoo, and WJCNY. *Id.* The Court granted the motion. All three organizations applied for the FY2025 Services NOFO. YWCA Kalamazoo also applied for funding through the FY25 Housing Assistance for Victims of Human Trafficking NOFO (Housing NOFO).

In May 2026, the plaintiffs moved to amend the preliminary injunction. The plaintiffs asked the Court to extend the injunction to all seven NOFOs providing funding under the TVPA and issued by the OVC in fiscal year 2025, or at a minimum, to cover both the Services NOFO and the Housing NOFO.

The plaintiffs do not seek to modify the scope of the Court's injunction with respect to the conditions in the Executive Orders, and this opinion is confined to the plaintiffs' challenges to the NOFO conditions.

**Discussion**

**A. Jurisdiction**

The Court begins, as it must, with jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

11

Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A dispute is a case or controversy appropriate for resolution by a federal court only if a plaintiff has a "personal stake" in the matter, *i.e.*, Article III standing. *Id.*; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

To establish standing, a plaintiff must show that it has "suffered, or will suffer, an injury that is 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). A plaintiff must demonstrate standing for "each claim" it presses, and "for each form of relief" that it seeks. *Id.* at 61 (quoting *TransUnion*, 594 U.S. at 431). And it must do so "with the manner and degree of evidence required at the successive stages of litigation." *Id.* at 58. At the preliminary injunction stage, a plaintiff must make a "clear showing" that it is "likely" to establish each element of standing. *Id.* (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).

The plaintiffs seek forward-looking injunctive relief and a declaratory judgment. They must show a likelihood of "a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction against them." *Id.* at 69.

The government does not contest that the new plaintiffs have standing to challenge the NOFO conditions in the Services NOFO. The Court must nevertheless ensure it has jurisdiction. *See Collins v. Yellen*, 594 U.S. 220, 242 (2021). In its first opinion, the Court explained that Freedom Network had standing to challenge the conditions in the Services NOFO because "they force it to choose between self-

censorship [in its grant application] or forfeiting the opportunity for millions of dollars in critical funding." *Freedom Network*, 2026 WL 800392, at *6.

The new plaintiffs have already applied for the grants and do not face an ongoing dilemma of whether to apply or how to frame their applications. They have altered their applications to avoid certain language related to immigration or diversity, equity, and inclusion, even though these terms are core components of their missions. Life-Span, for example, did not discuss its client demographics and the fact that approximately half of its clients are immigrants and many have limited English proficiency, fearing that doing so would trigger the NOFO conditions. *See* Mot. to Amend Prelim. Inj., Fox Decl., ¶¶ 38–39. YWCA Kalamazoo similarly omitted the words "immigration" and "undocumented," using the terms "limited English proficiency" and "agricultural" instead. *Id.*, Rosas Decl., ¶ 48. It also felt unable to describe its mission with the terms "anti-racist," "oppression," and "equity." *Id.*

These harms have already occurred, but the plaintiffs identify ongoing and future harms, too. In addition to omitting the term "undocumented" from its application, WJCNY decided to apply for seventy percent less funding than in prior years to ensure that it could sustain its functions if it faced a denied reimbursement based on the NOFO conditions. *Id.*, Varvaloucas Decl., ¶ 40. As a result, WJCNY will not be able to hire another case manager or immigration attorney. *Id.* ¶ 41. Its staff lacks capacity serve all prospective clients, and it will continue to turn away clients or limit the services it provides existing clients. Life-Span also decided not to seek OVC funding for an immigration attorney because of potential conflicts with the immigration enforcement condition. *Id.*, Fox Decl., ¶ 40.

YWCA faces a distinct harm to its transitional housing program, which provides shelter for survivors of trafficking. Fourteen landlords have "opted out of the partnership for fear that YWCA Kalamazoo will not be able to pay the rent or utilities in light of the volatility of federal funding." *Id.*, Rosas Decl., ¶ 51. YWCA faces both financial harm and harm to its ability to serve survivors due to its partners' reluctance to collaborate in the face of the NOFO conditions.

The plaintiffs also face a common prospective harm. They have not yet been awarded funding, and if their grant applications are successful, they will have to choose whether to accept the funds with the attached NOFO conditions and alter certain aspects of their service models or their speech to avoid penalties under the NOFO conditions, or operate as before and risk liability under the False Claims Act and potential loss of funding. "A person of ordinary firmness faced with this situation would steer clear of any speech or activities arguably promoting [DEI]." *See Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump* (*NADOHE*), 167 F.4th 86, 98 (4th Cir. 2026) (cleaned up).

Based on the cognizable harms of self-censorship, loss of partnerships, and the monetary harms of loss of grant funding, the Court concludes that the new plaintiffs have standing to challenge the conditions in the Services NOFO. *See Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) (addressing self-censorship as a cognizable harm); *TransUnion*, 594 U.S. at 425 (noting that monetary harm is a "traditional tangible harm[]"). These injuries are also fairly traceable to the government's challenged conduct and likely to be redressed by the injunction sought. *NADOHE*, 167 F.4th at 99.

14

Based on the same harms, YWCA Kalamazoo also has standing to challenge the NOFO conditions in the Housing NOFO, for which it alone applied. The government objects that "YWCA Kalamazoo freely choose to apply for the Housing for VHT [Victims of Human Trafficking] grant and thus does not face the dilemma of tailoring its NOFO submission as described by the [C]ourt." Resp. to Mot. to Amend Prelim. Inj. ¶ 6. To the contrary, because the original preliminary injunction did not reach the Housing NOFO, YWCA Kalamazoo certainly faced the dilemma described above. If OVC awards YWCA Kalamazoo funding under the Housing NOFO, it will face the same dilemma around accepting funding and modifying its programming that all of the organizations face with respect to funding under the Services NOFO. And the Court does not grasp why the YWCA's standing to challenge the Housing NOFO rests on the scope of the original preliminary injunction, a point that the government does not support by citing any authority.

Beyond the two NOFOs under which the new plaintiffs have sought funding, they seek a remedy that covers five additional NOFOs issued by the OVC. The government argues that the plaintiffs lack Article III standing to challenge the NOFO conditions in all seven NOFOs. The Court previously agreed, explaining that "[t]he funding conditions in the other NOFOs do not affect Freedom Network's ability to apply for grants." *Freedom Network*, 2026 WL 800392, at *8. The Court noted that there was a conceivable scenario in which Freedom Network would be harmed by the conditions in the other NOFOs: if it sought to collaborate with a recipient of a grant under one of those NOFOs, "the funding conditions may discourage the would-be collaborator from using those funds in a joint project with Freedom Network." *Id.* But

15

that harm was too speculative, coming to fruition after a series of uncertain events: Freedom Network's application and receipt of the grant (which, indeed, did not come to pass); the collaborators' application and receipt of a grant under another NOFO; a desire to collaborate between the parties; and a resulting chill. The Court held that this potential chill was too speculative to confer upon Freedom Network standing to challenge the conditions in all seven NOFOs.

The new plaintiffs now make a slightly different argument for a preliminary injunction covering the conditions in all seven NOFOs, arguing that they are chilled because they will not refer clients to other organizations that have applied for and may receive funding under the NOFOs not covered by this Court's preliminary injunction.

"[O]rganizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024). Organizations have standing to challenge actions that thwart their ability to use their resources to fulfill their mission and therefore injure the organization, but only if those actions "directly affected and interfered with" the organization's "core business activities." *Id.* at 395. This can be a means of challenging an action that harms an organization's members. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 369 (1982) (holding that organization had standing to challenge a racial steering practice that "frustrated the organization's [housing] counseling and referral services, with a consequent drain on resources," *id.*, but could not challenge actions injuring its "abstract social interests," *id.* at 379); *Kidd v. Pappas*, No. 22 C 7061, 2025 WL 3507374, at *6 (N.D. Ill. Dec. 8, 2025) (Kennelly, J.) (holding that organizations providing home counseling services had standing to

16

challenge Cook County's property tax sale procedure, which required organizations to "sift through tax sale records and knock on the doors of residences identified in those records to fulfill their home-counseling purpose").[3]

The new plaintiffs have not, however, demonstrated concrete injuries-in-fact that would allow them to challenge the conditions in the five NOFOs to which none of them have applied, even assuming that making the referrals is a core element of each organization's business. For standing to challenge a First Amendment violation, including chilled association, "a plaintiff's notional or subjective fear of chilling is insufficient" and the plaintiff must show an objectively reasonable, "concrete and particularized chilling effect[.]" *Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012). According to their motion, "all of the New Plaintiffs have expressed that *they may not be able to* refer clients to organizations that applied to NOFOs that are not covered by the preliminary injunction." Mot. to Amend Prelim. Inj. at 15 (emphasis added). The italicized language reflects the tentative nature of the potential harm. As with Freedom Network's earlier argument for an injunction covering all seven NOFOs, a series of contingencies remain here. The new plaintiffs will face this harm only if these other organizations are awarded funding under the NOFOs; no court enjoins the conditions in the other NOFOs; and the plaintiffs have clients they wish to refer to organizations receiving funding under those NOFOs.

---

[3] In addition to organizational standing, organizations may sue on behalf of their members, a concept known as associational standing. *See Wisconsin Voter All. v. Millis*, 166 F.4th 627, 638 (7th Cir. 2026). The new plaintiffs do not invoke the well-established multi-part test for associational standing, *see id.*, so the Court does not consider whether they have associational standing to challenge the harms to their clients that result from the NOFO conditions.

YWCA Kalamazoo has the strongest case for concrete harm. It states that it historically referred survivors to other OVC grantees, but now it "will not refer survivors or families requiring equitable protection to another OVC grantee who accepted a TVPA-authorized award with the New Funding Conditions, unless this Court extends the preliminary injunction." *Id.*, Rosas Decl., ¶ 52. It cites concerns that clients' "personal information could be shared with immigration authorities" or "specialized needs would go unmet due to anti-DEI constraints[.]" *Id.* At this stage, when OVC has not yet awarded funding to grantees, enforcement of the Immigration Enforcement Condition appears speculative, and self-censorship does not provide a basis for standing to challenge all seven NOFOs.

The other new plaintiffs use even weaker language. "Life-Span feels that it will not be able to safely refer clients—especially immigrant survivors—to organizations receiving funding from the other NOFOs." *Id.*, Fox Decl., ¶ 44; *see also* Varvaloucas Decl., ¶ 47 (WJCNY "would need to do a thorough assessment of any provider that accepted funding with the new funding conditions" to protect client privacy and ensure clients receive "critical services"). In short, the plaintiffs have not established standing to challenge the other five NOFOs based on an objectively reasonable chill on their association with organizations that may receive funds under those NOFOs. The injury to the new plaintiffs is more concrete than the injury that Freedom Network presented before applying for funding, but it remains too remote to provide a basis for challenge to all seven NOFOs.

In summary, the new plaintiffs have standing to challenge the conditions in the Housing NOFO (for which YWCA Kalamazoo applied) and the Services NOFO (for

18

which all the new plaintiffs applied).

**B.      Standard for motion for a preliminary injunction**

"[P]reliminary injunctions by their nature are not set in stone.  If circumstances change, the parties are always free to return to the district court to ask for changes." *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019); *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 627 (7th Cir. 2007) ("any injunction issued by a court of equity is itself subject to later modification").

To obtain a preliminary injunction, the movant "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Bevis v. City of Naperville*, 85 F.4th 1175, 1188 (7th Cir. 2023) (quoting *Winter*, 555 U.S. at 20).  When, as here, the government is a party to the suit, "assessing the harm to the opposing party and weighing the public interest . . . merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  The party seeking an injunction "carries the burden of persuasion" on each of these points.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995)).

**1.      Likelihood of success on the merits**

The new plaintiffs challenge the very same NOFO conditions that the Court analyzed in detail in its March opinion. *Freedom Network*, 2026 WL 800392, at *10– *22.  The Court will not reprise its analysis here.  For the reasons previously stated, the NOFO certification provision likely violates the First Amendment, and all three

19

NOFO conditions likely violate the separation of powers, the Spending Clause, and the APA.

### 2.     Irreparable harm

At the time of its motion for a preliminary injunction, Freedom Network was a prospective applicant for a grant under the Services NOFO.  The new plaintiffs have already applied for grants requiring compliance with the NOFO conditions.  But that difference is immaterial.  The new plaintiffs have established that they likely face violations of the First Amendment and the separation of powers.  A likely violation of these protected, "intangible and unquantifiable interests" suffices for irreparable harm. *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011); *Freedom Network*, 2026 WL 800392, at *21 ("[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." (quoting *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012))).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Ezell*, 651 F.3d at 699.

### 3.     Balance of equities and public interest

The balance of harms and public interest merge when the government is the opposing party.  *Nken*, 556 U.S. at 435.  "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Alvarez*, 679 F.3d at 589 (quoting *Christian Legal Soc'y v. Walker,* 453 F.3d 853, 859 (7th Cir. 2006)).  The same goes for injunctions protecting the separation of powers. *See City of Chicago v. Barr*, 961 F.3d 882, 918 (7th Cir. 2020) (affirming the lower court's conclusion that "the public interest was served by an injunction in that it acts as a check on the executive's

encroachment of congressional power that violates the separation of powers").

Much as the Court concluded that Freedom Network had demonstrated that the balance of equities and public interest weighed in its favor, *Freedom Network*, 2026 WL 800392, at *21–*22, the new plaintiffs have done so as well. The public interest is not harmed by an injunction against the NOFO conditions as all of the conditions likely violate the APA, the separation of powers, and the Spending Clause, and the NOFO certification provision likely violates the First Amendment.

## C.    Scope of relief

Each of the new plaintiffs has applied for the Services NOFO, and it is uncontested that relief should cover the conditions in this NOFO. And because YWCA Kalamazoo applied for the Housing NOFO and clearly has standing to challenge the associated conditions, the Court's relief will extend to the Housing NOFO conditions as well.

The plaintiffs' APA challenge requires a court to "hold unlawful and set aside agency action, findings, and conclusions found to be" arbitrary and capricious or contrary to law. 5 U.S.C. § 706. Section 705, which authorizes interim relief, likewise permits a court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings." 5 U.S.C. § 705. These provisions of the APA allow courts to act on the "agency action, findings, and conclusions" themselves rather than the agency's actions as to specific plaintiffs. *See Corner Post*, 603 U.S. at 830–31 (Kavanaugh, J., concurring). The APA authorizes a stay of the OVC's decision to include the NOFO Conditions in both the Services and Housing NOFOs and to

21

consider these conditions when evaluating grant applications under either NOFO.

The new plaintiffs urge the Court to expand the scope of relief to all seven NOFOs issued by the OVC. They argue that "complete relief" cannot be afforded without a broader injunction because they are chilled in their ability to refer clients to other organizations that have applied for and may receive funding pursuant to the NOFOs not covered by this Court's preliminary injunction. *See Trump v. CASA, Inc.*, 606 U.S. 831, 851 (2025) (describing "complete relief" as a long-standing element of the equitable tradition and differentiating the concept from "universal relief").

The government states that the Court previously rejected an identical request from Freedom Network. That is not quite accurate. As the Court explained in its discussion of standing, Freedom Network urged the Court to enjoin the conditions in all seven NOFOs based on potential collaborations with organizations that might receive funding under the other NOFOs. That request related to Freedom Network's role as a coalition of non-profits that trains and provides technical assistance to member organizations. *See Freedom Network*, 2026 WL 800392, at *8. By contrast, the new plaintiffs are providers of direct services, including legal aid and housing assistance. They primarily allege that they will not be able to refer their clients to other organizations that might apply for and receive funding under the five remaining NOFOs. This is a slightly different basis for a broader remedy than the one presented by Freedom Network.

But as the Court explained above in discussing its jurisdiction, the new plaintiffs have not pointed to an objectively reasonable basis for halting client referrals to potential recipients of funds under the other five NOFOs. This scenario actually

22

introduces even more uncertainty than in Freedom Network's original argument, as it is contingent on client needs. The proposed injury might theoretically allow a challenge to the conditions in the five other NOFOs, but the facts before the Court are not sufficiently concrete and definite as to warrant a broader remedy.

The plaintiffs note that some of their collaborations with law enforcement have been disrupted since the NOFOs were issued. But they do not draw a connection between the NOFO conditions and the shift in these relationships. The Court has no basis for concluding that law enforcement organizations are deterred from partnering with the WJCNY and YWCA Kalamazoo because of the NOFO conditions.

The plaintiffs draw on *Chicago Women in Trades v. Trump* for support. No. 25 C 2005, 2025 WL 3034056 (N.D. Ill. Oct. 30, 2025) (*CWIT III*). In that case, the Court enjoined enforcement of the J21 certification provision and held that enjoining enforcement against other grantees and contractors was required to afford CWIT complete relief. *Chicago Women in Trades v. Trump*, 778 F. Supp. 3d 959, 995 (N.D. Ill. 2025). On the government's motion to reconsider the scope of the injunction in light of the Supreme Court's discussion of universal remedies in *Trump v. CASA*, the Court explained that "enjoining all enforcement was and remains necessary to provide CWIT complete relief" and ensure its "ability to partner and collaborate with others[.]" *CWIT III*, 2025 WL 3034056, at *5.

The same reasoning undergirds the scope of relief with respect to the J21 certification provision in the Court's preliminary injunction in this case. The government and the plaintiffs agree that the Court's original injunction extends to all seven NOFOs, prohibiting the enjoined parties from requiring any grantee or

23

contractor from making a certification under the J21 provision. Dkt. 89 at 3. OVC "is and has been interpreting these provisions of the PI Order as applicable to all seven 2025 NOFOs authorized under the TVPA and, therefore, is not enforcing the new Certification Condition contained in any of the seven TVPA NOFOs." Dkt. 110 ¶ 3.

But the plaintiffs have not demonstrated that the harms caused by the immigration and discrimination conditions in all seven NOFOs are analogous to the harms caused by the certification provision. An injunction covering all seven OVC NOFOs is not necessary to afford the new plaintiffs complete relief, as the Court explained in its prior opinion.

### Conclusion

For the reasons stated, the Court grants, in part, the plaintiffs' motion to amend the preliminary injunction [dkt. no. 101]. Plaintiffs are to provide to the Court's proposed order e-mail address by July 1, 2026 a draft injunction (in Word format) embodying this ruling after review by defendants as to form. The Court also grants defendants' unopposed motion for leave to file a supplemental response [dkt. no. 110]. The telephonic status hearing set for July 2, 2026 is vacated and reset to July 23, 2026 at 9:05 a.m., using call-in number 650-479-3207, access code 2305-915-8729. A joint status report is to be filed on July 16, 2026.

Date: June 29, 2026

_____
MATTHEW F. KENNELLY
United States District Judge