**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| FREEDOM NETWORK USA, LIFE-SPAN, YOUNG WOMEN'S CHRISTIAN ASSOCIATION KALAMAZOO, AND WORKER JUSTICE CENTER OF NEW YORK, | Case No. 1:25-cv-12419 |
| Plaintiffs, | Judge: Hon. Matthew F. Kennelly |
| v. | JURY TRIAL DEMANDED |
| PRESIDENT DONALD J. TRUMP, OFFICE OF MANAGEMENT AND BUDGET, DIRECTOR OF THE OFFICE OF MANAGEMENT AND BUDGET RUSSELL VOUGHT, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, OFFICE FOR VICTIMS OF CRIME, ATTORNEY GENERAL OF THE U.S. DEPARTMENT OF JUSTICE TODD BLANCHE, | |
| Defendants. | |

# PLAINTIFFS' MOTION TO ENFORCE AND AMEND THE PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 2

A. The Court Enjoins the Certification Provision and the New Funding Conditions ..... 2

B. Defendants have Posted the Enjoined Certification Provision Curtailing Plaintiffs' Complete Relief ..... 5

C. Defendants Have Not Agreed to the Relief Sought ..... 8

D. Defendants Have Recycled the Same Enjoined New Funding Conditions into the Fiscal Year 2026 TVPA Authorized Grants under OVC. ..... 8

LEGAL STANDARD ..... 9

ARGUMENT ..... 11

A. The Court should Enforce its Preliminary Injunction Order as to the Certification Provision. ..... 12

B. The Court Should Amend the Section 705 stay to enjoin the New Funding Conditions in *all* TVPA authorized grant programs under OVC irrespective of fiscal year or stage in grant process. ..... 14

1. A Broader Section 705 Stay Is Necessary to Preserve the Status Quo Across All TVPA-Authorized Grants ..... 14

2. Only a Broader Stay Preserves the Status Quo in Light of Plaintiffs' Compounded Harm ..... 16

3. Cabining the Stay by Fiscal Year, Application Stage, or NOFO Would Fracture the Status Quo Into Two Systems of TVPA-Authorized Services. ..... 18

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIDS Vaccine Advoc. Coal. v. United States Dep't of State*,
No. 25-cv-00400 (AHA), 2025 WL 569381 (D.D.C. Feb. 20, 2025)....................................14

*Angoff v. Goldfine*,
270 F.2d 185 (1st Cir. 1959).........................................................................................2

*BG Grp. v. Argentina*,
572 U.S. 25 (2014).......................................................................................................13

*Cabrera v. United States Dep't of Lab.*,
792 F. Supp. 3d 91 (D.D.C.), *appeal dismissed*, No. 25-5340, 2025 WL
3635881 (D.C. Cir. Dec. 15, 2025)...............................................................................19

*City of Chicago v. United States Dep't of Homeland Sec.*,
No. 25 C 5463, 2026 WL 353581 (N.D. Ill. Feb. 9, 2026)...............................................14

*City of Chicago v. United States Dep't of Just.*,
822 F. Supp. 3d 873 (N.D. Ill. 2026).............................................................................15

*Cnty. of Santa Clara v. Noem*,
No. 3:25-cv-08330-WHO, 2025 WL 3503654 (N.D. Cal. Oct. 1, 2025)...........................15

*Commodity Futures Trading Comm'n v. Battoo*,
790 F.3d 748 (7th Cir. 2015).........................................................................................15

*Doe v. Noem*,
822 F. Supp. 3d 893 (N.D. Ill. 2026).............................................................................19

*Flaherty v. Pritzker*,
17 F. Supp. 3d 52 (D.D.C. 2014)...................................................................................10

*Hutto v. Finney*,
437 U.S. 678 (1978).....................................................................................................10

*Illinois v FEMA*,
No. 1:25-cv-00206, ECF No. 75 (D.R.I. Oct. 14, 2025)..........................................1, 12, 14, 19

*Illinois v. FEMA, No. CV 25-206 WES, 2025 WL 2908807 (D.R.I. Oct. 14,
2025), 2025), appeal filed, No. 25-2131 (1st Cir. Dec. 1, 2025)*.................................12, 14

*McComb v. Jacksonville Paper Co.*,
336 U.S. 187 (1949).....................................................................................................13

*Nat'l TPS All. v. Noem*,
773 F. Supp. 3d 807 (N.D. Cal.), *aff'd*, 150 F.4th 1000 (9th Cir. 2025) ......................... *passim*

*New York v. Trump*,
No. 25-CV-39-JJM-PAS, 2025 WL 440873 (D.R.I. Feb. 10, 2025) ......................................14

*Oregon Council for Humans. v. United States DOGE Serv.*,
794 F. Supp. 3d 840 (D. Or. 2025) ..........................................................................15

*Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*,
525 F.3d 533 (7th Cir. 2008) ..................................................................................10

*R.I. Coal. Against Domestic Violence v. Bondi*,
794 F. Supp. 3d 58 (D.R.I. 2025)..............................................................................20

*Shakman v. Democratic Org. of Cook Cnty.*,
533 F.2d 344 (7th Cir. 1976) ..................................................................................13

**Statutes**

8 U.S.C. § 1254a ..........................................................................................19

22 U.S.C. § 7105 ..........................................................................................19

Administration Procedure Act ................................................................. *passim*

Trafficking Victims Protection Act .......................................................... *passim*

**Other Authorities**

90 Fed. Reg. 8339 (Jan. 20, 2025) .................................................................3

90 Fed. Reg. 8633 (Jan. 21, 2025) .................................................................3

Exec. Order No. 14151, Ending Radical and Wasteful Government DEI Programs
and Preferencing, 90 Fed. Reg. 8339 (Jan. 20, 2025) ..........................................2

Exec. Order No. 14173, Ending Illegal Discrimination and Restoring Merit Based
Opportunity, 90 Fed. Reg. 8633 (Jan. 21, 2025)........................................... *passim*

## INTRODUCTION

Although this Court granted an injunction as to the Certification Provision, it currently appears at least seventy-nine times on DOJ websites and grant-related materials. Although some postings have a disclaimer stating that enforcement of the Certification Provision is temporarily paused, that disclaimer does not cure the violation. The continued postings undermine the injunction and curtail the Plaintiffs' complete relief. *See* Order, *Illinois v FEMA*, No. 1:25-cv-00206, ECF No. 75 (D.R.I. Oct. 14, 2025). Yet, the government refuses to remove the Certification Provision and claims that Plaintiffs must find them and bring them to Defendants' attention. As compliance is Defendants' obligation, Plaintiffs seek relief.

Next, on August 20, 2026, OVC released five Notice of Funding Opportunities for Fiscal Year 2026[1] authorized under the Trafficking Victims Protection Act that contain the three funding conditions that this Court enjoined. Despite the Section 705 stay of the New Funding Conditions into the Fiscal Year 2025 Notice of Funding Opportunities, Defendants released these same conditions into the Fiscal Year 2026 Notice of Funding Opportunities.

Every time this Court enjoins one of Defendants' unlawful actions, Defendants find a new way to resurrect these enjoined efforts. This pattern compounds the harm Plaintiffs already face because they now find themselves stuck between overlapping grant cycles. To protect the trafficking survivors they serve, Plaintiffs are now forced to cut ties with longstanding partners, screen every potential referral, and warn survivors that the services they desperately need may carry risk depending on whether an organization has accepted funding with these conditions. This makes survivors more vulnerable to the very cycle of exploitation and re-trafficking that the Trafficking Victims Protection Act was established to prevent.

[1] https://ovc.ojp.gov/funding/current-funding-opportunities

Defendants should not be allowed to evade this Court's Orders. Granting the motion to enforce as to the Certification Provision will not only effectuate this Court's Orders but allow DOJ grantees and contractors to freely collaborate without fear of liability. Granting the motion to Amend the Section 705 stay to cover all Trafficking Victims Protection Act authorized grants under the Office for Victims of Crime, irrespective of fiscal year and stage of the grant process, will restore the status quo the Section 705 stay was meant to protect. Absent that relief, Defendants will continue to ignore or evade this Court's Orders, Plaintiffs will be forced to return to this Court again and again seeking the same relief, and trafficking survivors will bear the consequences of not getting the life-saving services they need as Congress intended. Indeed, "one of the basic functions of equity is to prevent a multiplicity of actions." *Angoff v. Goldfine*, 270 F.2d 185, 190–91 (1st Cir. 1959).

## FACTUAL BACKGROUND

### A. The Court Enjoins the Certification Provision and the New Funding Conditions

Plaintiffs are Freedom Network USA (Freedom Network), Life-Span, Young Women's Christian Association ("YWCA") Kalamazoo, and Worker Justice Center of New York ("WJCNY"). Plaintiffs are non-profit organizations that provide training and technical assistance and direct services to trafficking survivors and center diversity, equity, and inclusion in their mission and programming. Plaintiffs have been awarded and relied on federal funding authorized under the Trafficking Victims Protection Act ("TVPA") for years. For additional background regarding Plaintiffs and the Trafficking Victims Protection Act ("TVPA"), *see* ECF Nos. 70, 101.

In January 2025, President Trump promulgated two executive orders related to diversity, equity, and inclusion (DEI). See Exec. Order No. 14151, Ending Radical and Wasteful Government

DEI Programs and Preferencing, 90 Fed. Reg. 8339 (Jan. 20, 2025); Exec. Order No. 14173, Ending Illegal Discrimination and Restoring Merit Based Opportunity, 90 Fed. Reg. 8633 (Jan. 21, 2025). Section 3(b)(iv) of Executive Order 14173 (the "J21 Certification Provision") states that "[t]he head of each agency shall include in every contract or grant award: . . . A term requiring such counterparty or recipient to certify that it does not operate any programs promoting DEI that violate any applicable Federal anti-discrimination laws." *Id.* § 3(b)(iv). *See* ECF No. 1 for additional background on the Executive Orders.

On December 30, 2025, the Office for Victims of Crime ("OVC") under the Department of Justice ("DOJ") issued seven Notices of Funding Opportunities ("NOFOs") that include three New Funding Conditions for TVPA-authorized grant programs:

The **Discrimination Condition**[2] states that:

2. Out of program scope is any program or activity, at any tier that violates any applicable Federal civil rights or nondiscrimination law. This includes violations that – (1) indirectly violate the law, including by promoting or facilitating violations; or (2) unlawfully favor individuals in any race or protected group, including on a majority or minority, or privileged or unprivileged, basis, within a given area, population, or sector.

The **Immigration Enforcement Condition**[3] states:

1. Out of program scope is any program or activity, at any tier that, directly or indirectly, violates (or promotes or facilitates the violation of) federal immigration law (including 8 U.S.C. § 1373) or impedes or hinders the enforcement of federal immigration law—including by failing to comply with 8 U.S.C. § 1373, give access to DHS agents, or honor DHS requests and provide requested notice to DHS agents.

---

[2] *See* Exhibit A to the Supplemental Declaration of Jean Bruggeman (ECF No. 71-3).

[3] *Id.*

The **NOFO Certification Provision**,[4] which mirrors the J21 Certification Provision, states:

> Compliance with Federal civil rights and nondiscrimination laws is material to the government's decision to make any award and payment under this program, including for purposes of the False Claims Act, and each recipient will be required to certify (in its acceptance of the conditions of the award) that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

On March 23, 2026, the Court granted Freedom Network's motion for preliminary injunction. The Court found that Freedom Network had standing to challenge the J21 Certification Provision. The Court found that Freedom Network was likely to succeed on the merits of its First Amendment, separation of powers, and Spending Clause claims challenging the J21 Certification Provision. The Court also enjoined enforcement of the J21 Certification Provision against all recipients of federal funds awarded by the DOJ in order to afford Freedom Network complete relief. For additional background, *see* ECF Nos. 88, 89. Court's injunction also explicitly states that "the NOFO Certification provision reflects OVC's implementation of the J21 Certification Provision." ECF No. 90 at pg. 21, n.3. This Court's order states:

> **ORDERED** that, the Enjoined Parties shall not require any grantee or contractor to make any "certification" or other representation pursuant to the J21 certification provision, § 3(b)(iv) of Executive Order 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025); and it is further

ECF. No. 89 at 3.

The Court also found that Freedom Network had standing to challenge the New Funding Conditions in the one FY25 NOFO they intended to apply for. The Court also found that Freedom Network was likely to succeed on the merits of its separation of powers, Spending Clause, and APA claims challenging the New Funding Conditions. See ECF Nos. 90, 89.

---

[4] *Id*. at 27.

On June 29, 2026, this Court granted all Plaintiffs' motion for amended preliminary injunction and a Section 705 stay under the Administration Procedure Act ("APA"). The Court found that Life-Span, YWCA Kalamazoo, and WJCNY had established standing to challenge two FY25 NOFOs they submitted applications for. The Court also found that these Plaintiffs are likely to succeed on the merits of their separation of powers, Spending Clause, and APA claims challenging the New Funding Conditions. This Court ordered that the New Funding Conditions cannot be enforced as part of grant administration or in evaluating grant applications. *See* ECF Nos. 116, 117.

### B. Defendants have Posted the Enjoined Certification Provision Curtailing Plaintiffs' Complete Relief.

The enjoined Certification Provision was posted to or remained on seventy-nine DOJ websites and grant-related resources despite this Court's first preliminary injunction, issued on March 23, 2026.[5] It is currently listed as a requirement in eleven award owner manuals[6] for the DOJ-Community Oriented Policing Services (COPS) grant program, which serve as final instructions for grantees.[7] Thus, it is likely that current COPS grantees will have to certify compliance with the very provision this Court enjoined.[8] Freedom Network collaborates with COPS grantees and these collaborations are less likely to occur if the Certification Provision remains posted.[9]

Defendants have also posted the Certification Provision inconsistently—some postings state that the injunction pauses enforcement, while others contain no such disclaimer. This inconsistency has compounded Plaintiffs' uncertainty about whether the Certification Provision remains

---

[5] *See* Appendix to Third Supplemental Declaration of Jean Bruggeman, dated September 16, 2026 ("Bruggeman Decl.").
[6] Bruggeman Decl. ¶ 6.
[7] Table II of Appendix to Bruggeman Decl.
[8] Bruggeman Decl. ¶¶ 6-8.
[9] *Id.* at ¶ 7-8.

operative and, if so, when or how it may be enforced.[10] The OJP Legal Notices webpage includes the following text under the "Legal Notice Pertaining to FY 2025 and FY 2026 awards (and award offices)" heading:[11]

---

**Legal Notice Pertaining to FY 2025 and FY 2026 awards (and award offers)**

**NOTICE**

**► OJP Program Office:**

- All OJP program offices

**► Award requirement affected (for awards and award offers with the following award condition, as originally set out in the award made by OJP):**

- Federal Civil Rights and Nondiscrimination Laws (certification)

  The recipient agrees that its compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812), and, by accepting this award, certifies that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

**► Nature and scope of the exception as to the affected award(s):**

- Pursuant to a preliminary injunction issued on March 23, 2026 (and amended on July 2, 2026), by the U.S. District Court for the Northern District of Illinois in *Freedom Network, USA, et al. v. Trump et al.*, 1:25cv12419, ECF Nos. 90, 117), DOJ has determined that it will not implement or enforce the above-listed award requirement while the injunction is in effect. If the status of applicable pending litigation changes, such that DOJ determines that it may and will implement or enforce this requirement, DOJ will provide advance written notice of such determination to affected recipients, including an indication of the effective date(s) for implementation thereof.

---

The other three postings of the Certification Provision are in the OJP Application Resource Guide,[12] the OJP General Terms and Conditions for FY25,[13] and the OJP General Terms and Conditions for FY26.[14] The Application Resource Guide says the following:

---

[10] *See* Second Declaration of Amy Fox, dated September 17, 2026 ("Fox Decl.") ¶¶ 8-11; Second Declaration of Susan Rosas, dated September 17, 2026 ("Rosas Decl.") ¶¶ 11-14; Second Declaration of Alaina Varvaloucas, dated September 17, 2026 ("Varvaloucas Decl.") ¶¶ 8-10; Bruggeman Decl. ¶¶ 12-22.
[11] https://www.ojp.gov/funding/explore/legal-notices#notice-4
[12] https://www.ojp.gov/funding/apply/ojp-grant-application-resource-guide
[13] https://www.ojp.gov/funding/explore/legaloverview2025/mandatorytermsconditions
[14] https://www.ojp.gov/funding/explore/legaloverview2026/mandatorytermsconditions

## Administrative, National Policy, and Other Legal Requirements

If selected for funding, in addition to implementing the funded project consistent with the OJP-approved application, the recipient must comply with all award conditions and all applicable requirements of federal statutes and regulations, including the applicable requirements referred to in the assurances and certifications executed in connection with award acceptance. The applicant should also consult the Legal Overview for Awards.

**DOJ Certified Standard Assurances and DOJ Certifications:** All applicants will be required to review and execute the following assurances and certifications when completing an application.

- Certified Standard Assurances
- Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; Drug-Free Workplace Requirements; Coordination with Affected Agencies

**Legal Requirements:** The Legal Overview for Awards webpage is intended to give applicants for OJP awards a general overview of important statutes, regulations, and award conditions that apply to many (or in some cases, all) OJP grants and cooperative agreements awarded in the fiscal year.

**Civil Rights Requirements:** If a successful applicant accepts funding from OJP—as a recipient of OJP funding—that award recipient must comply with certain federal civil rights laws that prohibit the award recipient from discriminating on the basis of race, color, national origin, sex, religion, or disability in how it delivers its program's services or benefits and in its employment practices. The civil rights laws that may be applicable to the award include, but are not limited to, Title VI of the Civil Rights Act of 1964, the nondiscrimination provisions of the Omnibus Crime Control and Safe Streets Act of 1968, and Section 504 of the Rehabilitation Act of 1973. These and other federal civil rights laws are discussed in greater detail on OJP's Legal Overview for Awards webpage within the fiscal year (FY) link under the "Civil Rights Requirements" section. Additional resources are available from the OJP Office for Civil Rights.

Compliance with Federal civil rights and nondiscrimination laws is material to the government's decision to make any award and payment under this program, including for purposes of the False Claims Act, and each recipient will be required to certify (in its acceptance of the conditions of the award) that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws. **[Pursuant to an injunction issued by the U.S. District Court for the Northern District of Illinois in *Freedom Network, USA, et al. v. Trump et al.*, 1:25cv12419, DOJ has determined that it will not implement or enforce this certification requirement under DOJ awards while the injunction is in effect.]**

The General Terms and Conditions for FY25 and FY26, however, do not reference the preliminary injunction, and instead say only the following:

# Federal Civil Rights and Nondiscrimination Laws (certification)

The recipient agrees that its compliance with all applicable Federal civil rights and nondiscrimination laws is material to the government's decision to make this award and any payment thereunder, including for purposes of the False Claims Act (31 U.S.C. 3729-3730 and 3801-3812), and, by accepting this award, certifies that it does not operate any programs (including any such programs having components relating to diversity, equity, and inclusion) that violate any applicable Federal civil rights or nondiscrimination laws.

**C. Defendants Have Not Agreed to the Relief Sought**

Plaintiffs have attempted to resolve this matter without the need for Court intervention. Plaintiffs first notified Defendants' counsel on August 21, 2026, that the Certification Provisions were posted on DOJ websites or grant-related resources in violation of this Court's injunction.[15]. Defendants' counsel's response was to deny that DOJ was in violation of the injunction and that additional language was provided as a courtesy.[16] And when asked to confirm if there were other DOJ and Office of Management and Budget ("OMB") websites with the certification provision, counsel invited Plaintiffs' counsel to identify other instances where the language appeared so that it could direct questions to the proper component of DOJ.[17]

**D. Defendants Have Recycled the Same Enjoined New Funding Conditions into the Fiscal Year 2026 TVPA Authorized Grants under OVC.**

On August 20, 2026, OVC released five NOFOs for Fiscal Year 2026[18] authorized under the Trafficking Victims Protection Act (TVPA) that contain the three funding conditions that this

[15] *See* Declaration of Rachel Stevens, dated September 25, 2026 ("Stevens Decl."), at Exhibit A.
[16] *Id.*
[17] *Id.*
[18] https://ovc.ojp.gov/funding/current-funding-opportunities

Court enjoined. Freedom Network and YWCA Kalamazoo intend to apply for the FY2026 Integrated Services for Minor Victims of Human Trafficking.[19] YWCA Kalamazoo intends to apply for the FY2026 Housing Assistance for Victims of Trafficking grant.[20] For both grant programs, The Grants.Gov deadline is September 28, 2026 and the Application JustGrants Deadline is October 5, 2026. Freedom Network, Life-Span, YWCA Kalamazoo, and WJCNY intend to apply for the FY2026 Services for Victims of Trafficking Grant.[21] The Grants.Gov Deadline is September 29, 2026 and the JustGrants Deadline is October 6, 2026.[22]

Plaintiffs now face two overlapping grant cycles that will cumulatively last an estimated four years, making the decisions between funding options futile. Whether they accept FY2025 funding subject to the New Funding Conditions, apply for FY2026 funding, or forgo federal funding altogether, they must reassess their referral partnerships *now* to protect clients throughout that four-year period.[23] Longstanding referral partnerships have already been terminated.[24] The partner dilemma—and the dire need to ensure continuity of care of services for survivors—remains regardless of which funding path they choose.

## LEGAL STANDARD

Plaintiffs bring two motions. The first motion is to enforce the preliminary injunction as to the J21 Certification Provision and NOFO Certification Provision (the "Certification Provision")[25]

---

[19] *See* Bruggeman Decl. ¶ 25; Rosas Decl. ¶ 4.
[20] *See* Rosas Decl. ¶ 6.
[21] *See* Bruggeman Decl, ¶ 25; Rosas Decl. ¶ 7; Varvaloucas Decl. ¶ 6; Fox Decl. ¶ 5.
[22] On September 25, 2026, the parties entered into a stipulation in which DOJ will agree not to enforce the New Funding Conditions in the three FY2026 NOFOs that Plaintiffs intend to apply for while the Court's existing preliminary injunction remains in effect. *See* Stevens Decl. ¶ 9; Exhibit B.
[23] *See* Bruggeman Decl. ¶ 39-42; Fox Decl. ¶ 23-28; Rosas Decl. ¶ 28-35; Varvaloucas Decl. ¶ 19-28.
[24] *See* Rosas Decl. ¶ 26.
[25] This Court found that the NOFO certification provision reflects OVC's implementation of the J21 certification provision. *See* ECF No. 90 n. 3.

and to strike all current and future postings of the Certification Provision on DOJ websites and grant-related resources. The second motion is to amend the Section 705 stay to enjoin the New Funding Conditions in *all* TVPA authorized grant programs under OVC, regardless of fiscal year and stage in the grant process. The challenged agency action is the issuance of the New Funding Conditions. Plaintiffs address them together here because the motions arise from the same underlying conduct by the same Defendants and seek related relief.

As to the Certification Provision, this Court may exercise its inherent authority to enforce its injunctions without resorting to contempt proceedings, applying a preponderance-of-the-evidence standard, and without any need to show willful or intentional disobedience. *Prima Tek II, L.L.C. v. Klerk's Plastic Indus., B.V.*, 525 F.3d 533 (7th Cir. 2008); *see also Hutto v. Finney*, 437 U.S. 678, 690 (1978) ("[F]ederal courts are not reduced to issuing injunctions against [government] officers and hoping for compliance."). Courts have broad equitable authority to enforce the terms of their mandates. "The exercise of this authority is 'particularly appropriate'" where a court is asked to "enforce the terms of its mandate to an administrative agency." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984)). This Court has already established that Plaintiffs have standing to challenge the Certification Provision. ECF Nos. 89, 117.

Regarding the request to broaden the Section 705 stay, this Court retains inherent equitable authority to do so in light of changes in the facts or for any other good reasons. *See Commodity Futures Trading Comm'n v. Battoo*, 790 F.3d 748, 751 (7th Cir. 2015) (holding that a district court may modify a preliminary injunction where it is "persuaded that change had benefits for the parties and the public interest").

This Court has already determined that Plaintiffs have standing to challenge the issuance of the New Funding Conditions. *See generally* ECF Nos. 90, 116; *see also* ECF No. 75, Order on Plaintiffs' Motion for Temporary Restraining Order (finding Freedom Network had standing based on its intent to apply to a TVPA-OVC grant with the New Funding Conditions before submitting an application).

**ARGUMENT**

Defendants' actions have made clear that further relief is indeed needed to enforce the Court's judgment and afford complete relief to Plaintiffs as to the Certification Provision. Despite this Court's unequivocally clear Order, the Certification Provision has appeared at least seventy-nine times across DOJ websites and grant-related materials.[26] This Court's Order also makes clear that it is Defendants' burden – not the Plaintiffs' – to comply with the order. ECF No. 117. Any disclaimer explaining the injunction does not cure Defendants' repeated violation of the preliminary injunction.

Moreover, as to the Section 705 stay, Defendants' decision to reissue the New Funding Conditions into the FY2026 NOFOs makes clear that further relief is necessary. Plaintiffs seek to amend the Section 705 stay to enjoin the New Funding Conditions in *all* TVPA authorized grant programs under OVC, regardless of fiscal year or stage in the grant process. A broader stay will meaningfully address the compounded harm Plaintiffs are currently experiencing, preserve the status quo between the parties as Section 705 envisions, and ensure that TVPA-authorized federally funded work does not become fractured between programs that are subject to the New Funding Conditions and those that are not.

[26] *See* Appendix to Bruggeman Decl.

### A. The Court should Enforce its Preliminary Injunction Order as to the Certification Provision.

Defendants should not be allowed to post the Certification Provision on DOJ websites and grant related materials. And it is not enough that there is some disclaimer. The disclaimer neither removes the chilling effect of the Certification Provision nor cures Defendants' initial act of posting it in violation of the injunction.[27] Precisely for this reason, the Court in *Illinois v. FEMA* found that the recycling of previously enjoined funding conditions with a similar disclaimer in the final stage of grant awards violated the underlying injunction. No. CV 25-206 WES, 2025 WL 2908807 (D.R.I. Oct. 14, 2025), *appeal filed*, No. 25-2131 (1st Cir. Dec. 1, 2025). The court found that the recycled conditions and disclaimer was "not a good faith effort to comply with the order; it is a ham-handed attempt to bully the [plaintiffs] into making promises they have no obligation to make at the risk of losing critical … funding already appropriated by Congress." *Illinois*, 2025 WL 2908807, at *1.

Defendants' actions achieve exactly what this Court's order was trying to prevent: the chilling of Plaintiffs' collaborations with stakeholders nationwide. COPS grantees have collaborated with and attended Freedom Network's survivor identification trainings on federal dollars in the past.[28] They have referred survivors and provide needed criminal records to Freedom Network's Survivor Reentry Project.[29] However, Freedom Network believes COPS grantees are less

[27] *See* Fox Decl. ¶¶ 8-12; Rosas Decl. ¶¶ 11-14; Varvaloucas Decl. ¶¶ 8-10; Bruggeman Decl. ¶¶ 12-22.
[28] *See* Bruggeman Decl. ¶ 7.
[29] *See* Bruggeman Decl. ¶ 7; Decl of Jean Bruggeman, dated December 19, 2025 at ¶¶ 12-14, 132.

likely to collaborate with and refer survivors to them, and vice versa, if the Certification Provision is listed at any stage of the grant process.[30]

In addition, as phrased, the disclaimer does not waive the Certification Provision. It merely postpones enforcement until a specified future event—the vacatur of the injunction. Applicants and grantees must therefore still agree to be bound by the Certification Provision and remain subject to its potential enforcement at a later date. That is a condition precedent, not a removal of the condition. *Cf. BG Grp. v. Argentina*, 572 U.S. 25, 35 (2014) ("[A] 'condition precedent' determines what must happen before 'a contractual duty arises' but does not 'make the *validity* of the contract depend on its happening[.]'") (emphasis in original) (quoting 13 Williston on Contracts § 38:4 (4th ed. 2013)); *see also* 8 Corbin on Contracts § 30.9 (2025).

Nor can Defendants escape their obligation to comply with this Court's injunction by demanding that Plaintiffs search for and identify where *Defendants* have posted the Certification Provision with or without a disclaimer. The obligation to ensure adherence to a court order rests exclusively with the party subject to the mandate. *See generally Shakman v. Democratic Org. of Cook Cnty.*, 533 F.2d 344, 353 n.13 (7th Cir. 1976) (finding civil contempt for a Defendant corporation and holding that "orders of the court must be obeyed, and to absolve…[a] corporate defendant from its responsibilities simply because the corporation has ordered [nominal] compliance [with the injunction] but has not sufficiently policed same, would be to open the door for wholesale disobediance of the Court."); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949) (holding that the enjoined defendant bears the absolute burden of "vigilant compliance," requiring

[30] *See Id.* at ¶ 8; ECF No. 90 at 50-51 ("the J21 certification provision acts as a barrier to Freedom Network's collaboration with these other organizations because the organizations are likely to avoid any association with speech that could violate the provision").

them to actively manage implementation and petition the court for clarification rather than executing an ambiguous path at their own risk).

Directing Enjoined Parties not to post the Certification Provision will ensure complete relief by eliminating confusion from inconsistent injunction qualifiers: the provision will simply not appear. Courts have granted similar motions to enforce when Defendants have failed to comply with judicial orders in the federal funding context. *See Illinois*, 2025 WL 2908807 at *19; *City of Chicago v. United States Dep't of Homeland Sec.*, No. 25 C 5463, 2026 WL 353581, at *3–4 (N.D. Ill. Feb. 9, 2026) (granting in part motion to enforce where government failed to timely process reimbursement requests in violation of the court's injunction); *AIDS Vaccine Advoc. Coal. v. United States Dep't of State*, No. 25-cv-00400 (AHA), 2025 WL 569381, at *3 (D.D.C. Feb. 20, 2025) (granting in part motion to enforce where Defendants continued the blanket suspension of funds in violation of the Court's TRO); *New York v. Trump*, No. 25-CV-39-JJM-PAS, 2025 WL 440873 (D.R.I. Feb. 10, 2025), *adhered to*, No. 25-CV-39-JJM-PAS, 2025 WL 467000 (D.R.I. Feb. 12, 2025), *and appeal dismissed*, No. 25-1138, 2025 WL 2301448 (1st Cir. Feb. 13, 2025) (granting Plaintiff's motion to enforce, denying government's argument that they could legally refuse to disperse or process funds).

### B. The Court Should Amend the Section 705 stay to enjoin the New Funding Conditions in *all* TVPA authorized grant programs under OVC irrespective of fiscal year or stage in grant process.

The current stay's limited scope leaves Plaintiffs exposed to the very harm Section 705 is meant to prevent, for the reasons set forth below.

#### 1. A Broader Section 705 Stay Is Necessary to Preserve the Status Quo Across All TVPA-Authorized Grants

Pursuant to the authority vested in it under Section 705 of the APA, the Court should enjoin the New Funding Conditions in ***all*** TVPA-authorized grant programs under OVC, regardless of

fiscal year or stage in the grant process, to postpone the challenged agency action and preserve a true status quo pending a decision on the merits. The broader Section 705 relief Plaintiffs request here will prevent Defendants from simply reimposing the same conditions annually and at different stages of the grant process. Without such relief, Plaintiffs—or potentially new grant applicants—would be forced to repeatedly seek judicial intervention to obtain relief from ongoing harms that Defendants have compounded by reissuing the New Funding Conditions.

Preventing this kind of situation is behind the purpose of the broader relief available under Section 705. Courts have consistently constrained agency action via Section 705 to preserve the status quo, which represents "the last peaceable uncontested status existing between the parties before the dispute developed." *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 835 (N.D. Cal.), *aff'd*, 150 F.4th 1000 (9th Cir. 2025) (quoting *Texas v. Biden*, 646 F. Supp. 3d 753, 771 (2022)) and citing *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1024 (9th Cir. 2016)) (cleaned up); *see also Oregon Council for Humans. v. United States DOGE Serv.,* 794 F. Supp. 3d 840 (D. Or. 2025). A stay under Section 705 should not be limited just to the agency action as applied to the specific plaintiffs bringing the action; instead, "[t]he operative text makes sense only in terms of a ***universal interim pause***." T. Elliot Gaiser, Mathura J. Sridharan & Nicholas A. Cordova, The Truth of Erasure: Universal Remedies for Universal Agency Actions, 2024 U. Chi. L. Rev. Online, at *8 (Aug. 28, 2024) (emphasis supplied); *see also City of Chicago v. United States Dep't of Just*., 822 F. Supp. 3d 873 (N.D. Ill. 2026); *Cnty. of Santa Clara v. Noem*, No. 3:25-cv-08330-WHO, 2025 WL 3503654 (N.D. Cal. Oct. 1, 2025).

Here, the last peaceable uncontested status existing between the parties is the period before the OVC issued New Funding Conditions into TVPA-authorized grants on December 20, 2025. Defendants' actions since then demonstrate that unless relief truly restores that status quo across

***all*** TVPA-authorized grant programs under OVC, Defendants will continue to evade it by reissuing the same conditions through new grant, funding cycles, and whatever workarounds they can find.

### 2. Only a Broader Stay Preserves the Status Quo in Light of Plaintiffs' Compounded Harm

Plaintiffs' current harm illustrates why preserving the status quo requires enjoining the New Funding Conditions across all TVPA-authorized grant programs under OVC, regardless of fiscal year, particularly because of their effect on partnerships.

Plaintiffs face a choice that is no choice at all. Whether they accept FY2025 funding if awarded, apply for or accept FY2026 funding, or forgo both, the New Funding Conditions will still continue to affect their ability to serve clients because a partner organization's potential acceptance of conditioned funding at any point over the next four years may expose shared clients to harm.[31] Plaintiffs must make critical decisions about applications, partnerships and referrals now, regardless of their own funding decisions.[32]

Trafficking survivors often require continuous services under multiple OVC grants across fiscal years, particularly for long-term immigration representation and criminal-record relief, to break the cycle of poverty and trafficking.[33] Plaintiffs often rely on referral partnerships with trusted organizations for services they cannot provide in-house. Because withdrawing a survivor from an established service provider at any point over the next four years can disrupt continuity of care and exacerbate vulnerability to trafficking, Plaintiffs must assess those partnerships now.[34]

---

[31] *See* Bruggeman Decl. ¶ 39-42; Fox Decl. ¶ 23-28; Rosas Decl. ¶ 28-35; Varvaloucas Decl. ¶ 19-28.

[32] *Id.*

[33] *See* Bruggeman Decl. ¶ 39-42; Fox Decl. ¶ 23-28; Rosas Decl. ¶ 25, 28-35; Varvaloucas Decl. ¶ 19-28.

[34] *See* Bruggeman Decl. ¶ 39-42; Fox Decl. ¶ 23-28; Rosas Decl. ¶ 28-35; Varvaloucas Decl. ¶ 19-28.

Plaintiffs likewise cannot in good conscience refer survivors to organizations that may agree to or later be required to share their information, location, or other sensitive information with immigration enforcement.[35]

Plaintiffs are already changing their conduct in response to that compounded uncertainty. Some have completely stopped partnerships**.** After this Court's order was announced, YWCA Kalamazoo ended a longstanding referral partnership with an organization that applied for and intends to accept a FY2025 grant that was not covered by the stay.[36] YWCA Kalamazoo could not responsibly refer trafficking survivors to an organization that could later accept the New Funding Conditions and, as a result, expose survivors to immigration enforcement or disruptions in services them render them vulnerable to re-trafficking.[37]

Plaintiffs are now screening every referral partner to assess if their current and anticipated federal funding is subject to the New Funding Conditions and protected by injunctive relief at multiple points across multiple grant cycles. Plaintiffs will not refer clients to an organization that may accept the New Funding Conditions.[38]

There will be instances where the only option for a survivor in a particular area is to seek services at an organization that is considering accepting funding with the New Funding Conditions. In these instances, Plaintiffs must now warn their clients about the risks of receiving services from these organizations, including service disruptions resulting from denied reimbursement, False

---

[35] *See* Varvaloucas Decl. ¶ 24, 26; Fox Decl. ¶ 24-25; Rosas Decl. ¶ 28-29; Bruggeman Decl. ¶ 39-42.
[36] *See* Rosas Decl. ¶ 26.
[37] *See* Rosas Decl. ¶ 26-27.
[38] *See* Bruggeman Decl. ¶ 39-42; Fox Decl. ¶ 23-28; Rosas Decl. ¶ 28-35; Varvaloucas Decl. ¶ 19-28.

Claims Act exposure, and immigration enforcement involvement.[39] Because these services often include basic necessities such as food and shelter, Plaintiffs are effectively forced to tell survivors that meeting an immediate basic need may come at the cost of risking serious harm later.[40]

Also, these additional screening and referral requirements will divert Plaintiffs' limited capacity from developing new partnerships. Plaintiffs cannot effectively pursue new collaborations while first determining whether each prospective partner may apply for or accept funding subject to the New Funding Conditions across multiple grant cycles.[41]

#### 3. Cabining the Stay by Fiscal Year, Application Stage, or NOFO Would Fracture the Status Quo Into Two Systems of TVPA-Authorized Services.

Cabining the Section 705 stay to specific fiscal years or stages of the application process will inevitably divide organizations performing the same TVPA-authorized work into different work streams. One group of grantees will work under funding that is protected by an injunction while the other may not. As discussed above, this significantly curtails new and existing partnerships between organizations.[42]

More fundamentally, the TVPA does not contemplate different requirements for victim services based on the fiscal year or NOFO funding them. Yet under Defendants' approach, a single authorizing statute produces different rules for organizations performing the same work based solely on the NOFO at issue. Preserving the status quo therefore requires relief that applies across

[39] *See* Bruggeman Decl. ¶ 39-42; Fox Decl. ¶ 24-28; Rosas Decl. ¶ 28-35; Varvaloucas Decl. ¶¶ 19-28.
[40] *See* Bruggeman Decl. ¶ 39-42; Fox Decl. 24-28; Rosas Decl. ¶ 28-35; Varvaloucas Decl. ¶ 19-28.
[41] *See* Fox Decl. ¶ 24.
[42] *See* Bruggeman Decl. ¶ 39-42; Fox Decl. ¶ 24-28; Rosas Decl. ¶ 28-35; Varvaloucas Decl. ¶¶ 19-28.

TVPA authorized grants under OVC, rather than a patchwork that leaves Plaintiffs to navigate which partners and services happen to fall within or outside the Court's protection.

*Doe v. Noem* demonstrates why preserving the status quo for all parties subjected to the challenged agency action is necessary to effectively postpone that action. 822 F. Supp. 3d 893 (N.D. Ill. 2026). There, this Court preserved the status quo by restoring DHS Secretary Mayorkas's 2025 TPS redesignation of Burma/Myanmar for all TPS holders. The stay did not distinguish among TPS holders based on the status of their applications or renewals; it preserved the status quo for all based on the TPS statute at 8 U.S.C. § 1254a. The same principle applies here. Just as *Doe* preserved the status quo for all TPS holders subject to the challenged agency action (the TPS designation) pending a decision on the merits, this Court should preserve the status quo for all potential applicants and grantees subject to the challenged agency action (the issuance of the New Funding Conditions) based on the TVPA at 22 U.S.C. § 7105 pending its merits determination. Otherwise, irreparable harm will occur before the Court reaches the merits.[43] *See Cabrera v. United States Dep't of Lab.,* 792 F. Supp. 3d 91 (D.D.C.), *appeal dismissed*, No. 25-5340, 2025 WL 3635881 (D.C. Cir. Dec. 15, 2025) (granting a Section 705 stay sought by students at seven Job Corps centers to preserve the status quo across all 99 centers, where all were authorized and funded under the same statute).

A Section 705 stay should also not be cabined to specific stages of the application process. Nor should it evaporate with the coming a new fiscal year during its pendency. Each stage that is not protected by a stay reopens the doors for Defendants to recycle the New Funding Conditions. *See Illinois*, 2025 WL 2908807, at *1 (Defendants recycled a previously enjoined immigration-enforcement condition into final awards for grant applications after the court had enjoined the

[43] *See, e.g.*, Bruggeman Decl. ¶ 39-42.

condition at summary judgment); *see also R.I. Coal. Against Domestic Violence v. Bondi*, 794 F. Supp. 3d 58 (D.R.I. 2025) (granting § 705 stay against similar conditions for current and future grant awards at all stages of the grant process). Equity requires the recycling of enjoined provisions to stop.

## CONCLUSION

Plaintiffs seek relief directing Defendants to strike the enjoined Certification Provisions whenever they may appear. To ensure ongoing compliance, Plaintiffs request a weekly status report confirming that the New Funding Conditions have not been attached, incorporated, imposed, or enforced in the administration of all current and future TVPA-authorized funding. The status report should also confirm that the TVPA authorized grants have not been terminated pursuant to the Executive Orders. Plaintiffs also seek relief to expand the Section 705 stay to include all TVPA-authorized grants by OVC, irrespective of fiscal year or stage of grant process. Otherwise, Defendants will simply find workarounds requiring Plaintiffs to repeatedly return to this Court, experiencing exacerbated and compounded harm.

Dated: September 25, 2026

Respectfully Submitted,

/s/ *Neil Nandi*
Neil Nandi
CROWELL & MORING LLP
300 N. LaSalle Drive
Suite 2500
Chicago, IL 60654
Tel: (312) 840-3108
nnandi@crowell.com

s/ *Warrington Parker*
Warrington Parker*
CROWELL & MORING LLP
3 Embarcadero Center, 26th Floor
San Francisco, CA 94111
Tel: (415) 986-2800
wparker@crowell.com

/s/ *Keith Harrison*
Keith J. Harrison*
CROWELL & MORING LLP
600 Fifth Street, NW
Washington, DC 20001
Tel: (202) 624-2500
kharrison@crowell.com

/s/ *Sabrina A. Talukder*
Sabrina A. Talukder*
Kathryn J. Youker*
Lawyers' Committee for Civil Rights Under Law
1500 K Street, N.W. Suite 900
Washington, D.C. 20005
Telephone: (202) 662-8600

/s/ *Rachel Stevens*
Rachel Stevens*
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel: (212) 590-5430
rstevens@crowell.com

Facsimile: (202) 783-0857
stalukder@lawyerscommittee.org
kyouker@lawyerscommittee.org

*/s/ Aneel L. Chablani*
Aneel L. Chablani (No. 6242658)
Ami D. Gandhi (No. 6282924)
Chicago Lawyers' Committee for Civil Rights
25 E. Washington St., Ste. 1300
Chicago, IL 60602
Telephone: (312) 630-9744
Facsimile: (312) 630-1127
achablani@clccrul.org
agandhi@clccrul.org

*Attorneys for Freedom Network USA, Life-Span, Young Women's Christian Association Kalamazoo, Worker Justice Center of New York, and Legal Aid Foundation of Los Angeles*
**Admitted Pro hac vice*

## CERTIFICATE OF SERVICE

I certify that on September 25, 2026, I electronically filed the foregoing document with the Clerk of the court of the United States District court for the Northern District of Illinois, using the CM/ECF filing system, which will forward notice to all counsel of record.

/s/ *Joe Parilla*
Joe Parilla